# IN THE SUPREME COURT OF TEXAS

══════════

No. 11-0517

══════════

CERTIFIED EMS, INC. D/B/A CPNS STAFFING, PETITIONER,

v.

CHERIE POTTS, RESPONDENT

══════════════════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIRST DISTRICT OF TEXAS

══════════════════════════════════════════════════

**Argued October 17, 2012**

CHIEF JUSTICE JEFFERSON delivered the opinion of the Court.

A patient alleged that a hospital nurse, who was temporarily placed with the hospital by a staffing service, assaulted her. The patient sued under the Texas Medical Liability Act, asserting that the staffing service was directly and vicariously liable for the nurse's conduct. The staffing service sought dismissal because the patient's expert reports did not specify how the service was directly negligent. The service has not challenged, in this Court, the reports' adequacy concerning its vicarious liability.

The trial court denied the motion to dismiss, and the court of appeals affirmed. It held that because the reports support a theory of vicarious liability against the staffing service, the lack of a description supporting direct liability is not fatal to the claimant's maintaining her cause of action. We agree with the court of appeals, but for different reasons. Accordingly, we affirm the court of appeals' judgment.

## I. Background

Cherie Potts was admitted to Christus St. Catherine's Hospital for treatment of a kidney infection. One of the nurses assigned to her care, Les Hardin, was referred to the hospital by a staffing service owned by Certified EMS. Potts claims that Hardin assaulted her sexually and verbally during her hospital stay. Potts alleges that the assaults caused her anxiety and physical pain. She sued the hospital, Hardin, and Certified EMS.[1]

Potts claimed that Certified EMS was directly liable for Hardin's conduct because it failed to properly train and oversee its staff, enforce applicable standards of care, and employ protocols to ensure quality patient care and adequate staff supervision. Potts also alleged that Certified EMS was vicariously liable under the theory of *respondeat superior*.

Because Potts sued under the Texas Medical Liability Act, she was required to serve each defendant with an expert report that met certain statutory requirements. *See* TEX. CIV. PRAC. & REM. CODE § 74.351 (outlining requirements and guidelines for expert reports in health care liability claims). Potts timely served reports from Nurse S. Francis Scholl Foster and Dr. Kit Harrison, Ph.D. Certified EMS challenged the reports, and the trial court gave Potts thirty days to cure the alleged deficiencies. *See id.* § 74.351(c). In response, Potts supplemented Nurse Foster's original report and provided a new one from Dr. Milton Altschuler, M.D.

The relevant portions of Nurse Foster's supplemented report outline the appropriate standard of care for nurses and nursing agencies, describe the steps that should have been taken by Hardin and

---

[1] Christus St. Catherine's Hospital and Les Hardin are not parties to this interlocutory appeal.

2

Certified EMS to prevent the assaults, and conclude that Hardin's and Certified EMS's failures caused Potts's injuries. Dr. Altschuler's report states that Hardin engaged in sexually inappropriate and intrusive conduct, causing the injuries that Potts has alleged.

Certified EMS objected to the newly submitted reports and moved to dismiss on numerous grounds, among them that the reports omitted any explicit reference to Certified EMS's direct liability for Hardin's conduct.

The trial court denied the motion, and Certified EMS appealed. *See* TEX. CIV. PRAC. & REM. CODE § 51.014 (a)(9) (allowing interlocutory appeal of an order denying relief sought by motion under section 74.351(b) in certain circumstances). The court of appeals affirmed, holding (as relevant here) that "if the claimant timely serves an expert report that adequately addresses at least one liability theory against a defendant health care provider, the suit can proceed, including discovery, without the need for every liability theory to be addressed in the report." 355 S.W.3d 683, 693.[2] We granted Certified EMS's petition for review, which raises a single issue: Must a claimant in a health care liability suit provide an expert report for each pleaded liability theory? 55 Tex. Sup. Ct. J. 461 (Mar. 30, 2012).

## II.    Conflict Among the Courts of Appeals

Numerous appellate decisions have discussed the extent to which an expert report must examine every liability theory alleged. The cases reach varied results. Several courts of appeals, like the court of appeals in this case, have determined that a claimant's expert report(s) need address only

---

[2] The court of appeals also determined that the expert reports that Potts provided to Certified EMS sufficiently addressed her vicarious liability theory, but failed to address her direct liability theories. 355 S.W.3d at 686. Neither party has challenged those conclusions.

3

a single theory for the entire suit to proceed.[3]  Some of those decisions rely on *Potts*, either indirectly

or explicitly.[4]  The *Potts* court focused on the Act's plain language, specifically on the requirement

that an expert report be served "[i]n a health care liability claim," which the statute further defines

as a "cause of action."  *See* 355 S.W.3d at 690–92; *see also* TEX. CIV. PRAC. & REM. CODE

§ 74.001(a)(13) ("'Health care liability claim' means a cause of action against a health care provider

or physician for treatment, lack of treatment, or other claimed departure from accepted standards of

medical care, or health care, or safety or professional or administrative services directly related to

health care, which proximately results in injury to or death of a claimant, whether the claimant's

claim or cause of action sounds in tort or contract.").  Relying on our discussion of "cause of action"

in *In re Jorden*, 249 S.W.3d 416 (Tex. 2008), the *Potts* court reasoned that the Act requires an expert

report only for each set of operative facts that give rise to one or more bases for suing.  355 S.W.3d

at 691.  Thus, if an expert report adequately addresses a single liability theory within a cause of

action, the entire case may proceed.  *Id*.

---

[3] *See Laurel Ridge Treatment Ctr. v. Garcia*, No. 04-12-00098-CV, 2012 WL 3731748, at *1 (Tex. App.—San Antonio Aug. 29, 2012, pet. filed) (mem. op.) (holding that the trial court did not abuse its discretion when it denied defendant's motion to dismiss because an "expert report is required to be adequate with regard to only one liability theory within a cause of action in order for the claimant to proceed with the entire cause of action against the defendant"); *Nexion Health at Duncanville, Inc. v. Ross*, 374 S.W.3d 619, 626 (Tex. App.—Dallas 2012, pet. denied) (holding that an expert report need "not address each 'specific act of negligence' pleaded by a plaintiff . . . [to] satisfy the two intended purposes of the expert report requirement"); *Univ. of Tex. Med. Branch at Galveston v. Qi*, 370 S.W.3d 406, 415–16 (Tex. App.—Houston [14th Dist.] 2012, no pet.)(referencing the *Potts* court's reasoning when it held that an expert report need not address "every act or omission mentioned in the pleadings, so long as at least one liability theory within each cause of action is sufficiently addressed"); *Clear Lake Rehab. Hosp., L.L.C. v. Karber*, No. 01-09-00883-CV, 2010 WL 987758, at * 5 n.7 (Tex. App.—Houston [1st Dist.] Mar. 18, 2010, no pet.) (mem. op.) (suggesting that a report that is adequate as to one theory of liability can move an entire cause of action past the expert report stage).

[4] *See, e.g.*, *Laurel Ridge Treatment Ctr.*, 2012 WL 3731748, at *1; *Nexion Health*, 374 S.W.3d at 626–27.

Other courts insist that an expert report must specifically address each liability theory.[5] Unsupported theories must be dismissed. Those courts also look to the statute's language. Some interpret "health care liability claim" to mean a single theory of liability.[6] Thus, when the statute requires that a "liability claim" be supported by an expert report, these courts reason that the report must address each liability theory. Other courts of appeals interpret "health care liability claim" to mean a cause of action, or set of operative facts, like the *Potts* court did. But unlike the *Potts* court, they reason that different theories of liability must be based on different sets of operative facts and each, therefore, requires its own expert report. In that respect, several cases have held that direct and vicarious liability theories involve different sets of operative facts because "the facts required to establish the defendant's vicarious liability, i.e., the acts of [the agent and his relationship] to [the principal], differ from the facts required to establish the . . . defendant's direct liability, i.e., [its]

---

[5] *See MSHC the Waterton at Cowhorn Creek, LLC v. Miller,* No. 06-12-00056-CV, 2012 WL 6218001, at *7 (Tex. App.—Texarkana Dec. 14, 2012, no pet.) (holding that the claimant's expert reports must address vicarious and direct liability claims separately because the theories were based on two different sets of operative facts, which were "qualitatively different from the facts necessary to establish [the employer's] vicarious liability for the acts or omissions of its staff"); *Fung v. Fischer*, 365 S.W.3d 507 (Tex. App.—Austin 2012, no pet.) (finding that because the claimant's theories of liability were both vicarious and direct and thus based on different sets of operative facts, the expert report that only addressed the employee's conduct was not sufficient to impose direct liability on the employer); *Hendrick Med. Ctr. v. Miller*, No. 11-11-00141-CV, 2012 WL 314062, at *3 (Tex. App.—Eastland Jan. 26, 2012, no pet.) (mem. op.) (holding that direct and vicarious liability claims must be evaluated separately to determine whether each claim was sufficiently supported by an expert report); *River Oaks Endoscopy Ctrs., L.L.P. v. Serrano*, No. 09-10-00201-CV, 2011 WL 303795, at *2 (Tex. App.—Beaumont Jan. 27, 2011, no pet.) (mem. op.) (holding that a claimant alleging theories of direct and vicarious liability must provide an expert report that addresses all theories so that the defendant can be made aware of the specific conduct being called into question); *Beaumont Bone & Joint, P.A. v. Slaughter*, No. 09-09-00316-CV, 2010 WL 730152, at *3–4 (Tex. App.—Beaumont Mar. 4, 2010, pet. denied) (mem. op.) (holding that although vicarious liability claims were sufficiently addressed in an expert report, direct liability claims were not, and should have been dismissed); *Azle Manor, Inc. v. Vaden*, No. 2-08-115-CV, 2008 WL 4831408, at *10 (Tex. App.—Fort Worth Nov. 6, 2008, no pet.) (mem. op.) (holding that although vicarious liability claims against two doctors were sufficiently addressed in two expert reports, the direct liability claims were not, and thus the trial court abused its discretion when it denied the defendant doctors' motion to dismiss the direct liability claims).

[6] *See, e.g.*, *Hendrick Med. Ctr.*, 2012 WL 314062, at *3.

provision of particular policies and procedures." *Fung v. Fischer*, 365 S.W.3d 507, 522 (Tex. App.—Austin 2012, no pet.); *see also MSHC the Waterton at Cowhorn Creek, LLC v. Miller*, No. 06-12-00056-CV, 2012 WL 6218001, at *7 (Tex. App.—Texarkana Dec. 14, 2012, no pet.) ("The facts required to establish direct liability here are qualitatively different from the facts necessary to establish . . . vicarious liability . . . . ").

Still other courts have addressed questions that vary slightly from the one before us today. These courts have engaged in analyses that demonstrate the need to definitively resolve the question of how expert reports treat multiple theories of liability.[7]

These conflicts give us jurisdiction over this interlocutory appeal. TEX. GOV'T CODE § 22.225(c).[8]

---

[7] *See Marino v. Wilkins*, No. 01-11-00835-CV, 2012 WL 749997, at *8–10 (Tex. App.—Houston [1st Dist.] Mar. 8, 2012, pet. denied) (holding, under the *Potts* reasoning, that a health care liability suit may proceed under one liability theory if the defendant does not move to dismiss all theories of liability in his challenge to the expert reports); *Petty v. Churner*, 310 S.W.3d 131, 138 (Tex. App.—Dallas 2010, no pet.) (concluding that the trial court properly dismissed direct liability claims because the vicarious and direct liability theories were based on two different standards of care, and an expert report that only addressed the vicarious theory did not meet the statutory requirements); *Obstetrical and Gynecological Assocs., P.A. v. McCoy*, 283 S.W.3d 96, 105–06 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (deciding that a claimant need not provide an expert report addressing an employer's conduct if the claimant only seeks to hold the employer liable under a vicarious liability theory, noting that there is a distinction between allegations of liability made against the employer based on the conduct of employees versus allegations of direct liability based on the conduct of the employer entity itself); *Methodist Charlton Med. Ctr. v. Steele*, 274 S.W.3d 47, 50–51 (Tex. App.—Dallas 2008, pet. denied) (holding that because the claimant failed to timely serve expert reports related to the direct liability claims against defendants that were added in an amended petition, those particular claims should have been dismissed; but, the vicarious liability claims, based on the conduct of a nurse employee, were addressed in a timely report and could move forward).

[8] *See also* TEX. GOV'T CODE § 22.225(e) (noting that "one court holds differently from another when there is inconsistency in their respective decisions that should be clarified to remove unnecessary uncertainty in the law and unfairness to litigants").

6

## III.    Addressing Theories of Liability

Certified EMS contends that if a claimant's report does not adequately address each asserted theory, the trial court must dismiss those theories that are unsupported by a report.  Thus, if a plaintiff's allegations include both direct and vicarious liability claims, the report is deficient if it does not cover both.  We are not persuaded.

Several courts of appeals rely on the statute's use of the term "cause of action" to decide this issue.  When we discussed the phrase in *In re Jorden*, we noted that it "generally applies to facts, not filings."  *Jorden*, 249 S.W.3d at 421.  We also looked to Black's Law Dictionary, which "defines 'cause of action' as [a] group of operative facts giving rise to one or more bases for suing; a factual situation that entitles one person to obtain a remedy in court from another person."  *Id.* (quoting BLACK'S LAW DICTIONARY 235 (8th ed. 2004)).  From this, several appellate courts have relied on "operative facts" to reach opposing results—either that an expert report must address every pleaded liability theory,[9] or that it need not.[10]  The competing conclusions demonstrate the pitfalls of this approach.

The focus on operative facts raises more questions than it answers.  Are the "operative facts" underlying alleged liability for failure to train different from the underlying allegations of vicarious liability for medical malpractice?  The court of appeals here said no,[11] but others would say yes.[12]

---

[9] *See, e.g.*, *MSHC the Waterton*, 2012 WL 6218001, at *6–7.

[10] *See, e.g.*, *Qi*, 370 S.W.3d at 415–16.

[11] 355 S.W.3d at 690–92.

[12] *See, e.g.*, *MSHC the Waterton*, 2012 WL 6218001, at *7; *Fung*, 365 S.W.3d at 522.

Would each of Potts's direct liability theories against Certified EMS—for failing to train its employees, failing to enforce accepted standards of care, and failing to employ protocols to ensure quality care for patients—require its own expert report, because the facts underlying each allegation may differ?  Will, as the cases suggest, the relevant operative facts be disputed in every case, leading to additional time, expense, and interlocutory appeals?

We appreciate the courts of appeals' reasoning, but decline to follow that approach.  No provision of the Act requires an expert report to address each alleged liability theory.  The Act requires a claimant to file an expert report "[i]n a health care liability claim." TEX. CIV. PRAC. & REM. CODE § 74.351(a).  Once an expert report is timely served and properly challenged, the trial court:

> shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report.

*Id.* § 74.351(l); *see also Loaisiga v. Cerda*, 379 S.W.3d 248, 260 (Tex. 2012) (same).  A valid expert report has three elements:  it must fairly summarize the applicable standard of care; it must explain how a physician or health care provider failed to meet that standard; and it must establish the causal relationship between the failure and the harm alleged.  TEX. CIV. PRAC. & REM. CODE § 74.351(r)(6); *see Scoresby v. Santillan,* 346 S.W.3d 546, 556 (Tex. 2011).  A report that satisfies these requirements, even if as to one theory only, entitles the claimant to proceed with a suit against the physician or health care provider.

The report serves two functions.  "First, the report must inform the defendant of the specific conduct the plaintiff has called into question.  Second, and equally important, the report must

8

provide a basis for the trial court to conclude that the claims have merit." *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 879 (Tex. 2001).

A report need not cover every alleged liability theory to make the defendant aware of the conduct that is at issue. *Palacios* recognized that an expert report does not require litigation-ready evidence. Rather, "to avoid dismissal . . . [t]he report can be informal in that the information in the report does not have to meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial." *Id.* For the particular liability theory addressed, the report must sufficiently describe the defendant's alleged conduct. Such a report both informs a defendant of the behavior in question and allows the trial court to determine if the allegations have merit. If the trial court decides that a liability theory is supported, then the claim is not frivolous, and the suit may proceed.

## IV. Legislative Intent

This approach is consistent with the Legislature's intent. *See Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011) ("Our primary objective in construing statutes is to give effect to the Legislature's intent."). In amending the Act, the Legislature sought to reduce "the excessive frequency and severity of . . . claims," but to "do so in a manner that will not unduly restrict a claimant's rights any more than necessary to deal with the crisis." Act of June 11, 2003, 78th Leg., R.S., ch. 204, § 10.11(b)(1), (3), 2003 Tex. Gen. Laws 847, 884. In accordance with this goal, we have opined that one purpose of the report requirement is "to expeditiously weed out claims that have no merit." *Loaisiga,* 379 S.W.3d at 263. We have also stated that the purpose of evaluating expert reports is "to deter frivolous claims, not to dispose of claims regardless of their merits." *Scoresby,* 346 S.W.3d at 554; *see also Loaisiga*, 379 S.W.3d at 258 (recognizing that the expert

9

report "requirements are meant to identify frivolous claims and reduce the expense and time to dispose of any that are filed"); *In re Jorden*, 249 S.W.3d at 421.

Our holding today satisfies these purposes. If a health care liability claim contains at least one viable liability theory, as evidenced by an expert report meeting the statutory requirements, the claim cannot be frivolous. The Legislature's goal was to deter baseless claims, not to block earnest ones. Potts demonstrated to the trial court that at least one of her alleged theories—vicarious liability—had expert support. She cleared the first hurdle, and the appeals court correctly recognized her right to have the entire case move forward. 355 S.W.3d at 693.

## V. Efficient and Practical Litigation

Certified EMS argues that this holding will prolong litigation by forcing defendants to defend meritless claims. For two reasons, we disagree. First, if there is at least one valid theory, the defendant will be engaged in further litigation regardless of the merits of the remaining theories. Defending those theories would not be unduly burdensome. The converse is not true. To require an expert report for each and every theory would entangle the courts and the parties in collateral fights about intricacies of pleadings rather than the merits of a cause of action, creating additional expense and delay as trial and appellate courts parse theories that could be disposed of more simply through other means as the case progresses. *Cf. Scoresby*, 346 S.W.3d at 549 (applying a "lenient standard" to a plaintiff's right to cure a deficient report, noting that approach "avoids the expense and delay of multiple interlocutory appeals and assures a claimant a fair opportunity to demonstrate that his claim is not frivolous").

This leads to our second point. The expert report requirement is a threshold mechanism to dispose of claims lacking merit, but reports are not the only means to address weak subsets of those claims. The original and amended petitions inform a defendant of the claims against it and limit what a plaintiff may argue at trial. Discovery allows a claimant to refine her pleadings to abandon untenable theories and pursue supported ones. Summary judgment motions permit trial courts to dispose of claims that lack evidentiary support. But while a full development of all liability theories may be required for pretrial motions or to convince a judge or jury during trial, there is no such requirement at the expert report stage. *See Palacios*, 46 S.W.3d at 879.

It may be difficult or impossible for a claimant to know every viable liability theory within 120 days of filing suit, and the Act reflects this reality. It strictly limits discovery until expert reports have been provided, and we have held that the statute's plain language prohibits presuit depositions authorized under Rule 202 of the Texas Rules of Civil Procedure. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(s); TEX. R. CIV. P. 202; *In re Jorden*, 249 S.W.3d at 418. The Act requires the expert report to summarize the expert's opinions "as of the date of the report," recognizing that those opinions are subject to further refinement. *Id*. § 74.351(r)(6). Discovery can reveal facts supporting additional liability theories, and the Act does not prohibit a claimant from amending her petition accordingly. Under Certified EMS's reasoning, a claimant would have to serve an expert report each time a new theory is discovered. Not only would that be impractical, it would prohibit altogether those theories asserted more than 120 days after the original petition was filed—effectively eliminating a claimant's ability to add newly discovered theories. *See id.* § 74.351(a) (requiring that

11

expert report be filed "not later than the 120th day after the date the original petition was filed"). We see no indication that the Legislature intended such a result.

In sum, an expert report that adequately addresses at least one pleaded liability theory satisfies the statutory requirements, and the trial court must not dismiss in such a case. To the extent other cases hold differently, we disapprove of them.

## VI. *Gardner v. U.S. Imaging, Inc.*, 274 S.W.3d 669 (Tex. 2008) (per curiam)

Finally, we address Certified EMS's argument that *Gardner* precludes the result we reach today. In *Gardner*, we stated that "[w]hen a party's alleged health care liability is purely vicarious, a report that adequately implicates the actions of that party's agents or employees is sufficient." *Gardner v. U.S. Imaging, Inc.*, 274 S.W.3d 669, 671–72 (Tex. 2008) (per curiam). Certified EMS argues that because Potts's theories are not *purely* vicarious, *Gardner* implies that each must be addressed in an expert report.

We disagree that *Gardner* compels such a conclusion. Our statement distinguished between expert reports required for vicarious liability claims, in which merely implicating the agent's conduct is sufficient, and those required for direct ones, in which the employer's conduct must be implicated. But we did not address the effect of such a report in a claim involving both vicarious and direct liability. To clarify, when a health care liability claim involves a vicarious liability theory, either alone or in combination with other theories, an expert report that meets the statutory standards as to the employee is sufficient to implicate the employer's conduct under the vicarious theory. And if any liability theory has been adequately covered, the entire case may proceed.

12

## VII.    Conclusion

Because Potts's reports sufficiently addressed one liability theory, the trial court correctly denied the motion to dismiss.  We affirm the court of appeals' judgment.  TEX. R. APP. P. 60.2(a).

_____
Wallace B. Jefferson
Chief Justice

**OPINION DELIVERED:**  February 15, 2013

13