**Affirmed and Memorandum Opinion filed June 13, 2013.**



In The

# Fourteenth Court of Appeals

## NO. 14-12-00682-CV

### SAN JACINTO METHODIST HOSPITAL, Appellant,

### V.

### AARON MCCOY, Appellee.

**On Appeal from the 125th District Court
Harris County
Trial Court Cause No. 2011-45867**

## M E M O R A N D U M   O P I N I O N

Appellee Aaron McCoy brought the underlying healthcare-liability suit against appellant San Jacinto Methodist Hospital ("Methodist") under the Medical Liability Act. *See* Tex. Civ. Prac. & Rem. Code §§ 74.001–.507. In this interlocutory appeal, Methodist argues the trial court abused its discretion by denying Methodist's motion to dismiss McCoy's claims against it because, Methodist maintains, McCoy's expert reports are insufficient. We affirm.

## I

On September 6, 2009, McCoy was admitted to Methodist's emergency room with abdominal pain and was diagnosed with acute appendicitis. Dr. Monira Hamid-Kundi performed a laparoscopic appendectomy on McCoy that same day, and Robin Johnson, a Methodist employee, served as the operating-room nurse during the procedure. The operation appeared to be successful, and McCoy was discharged the following day. But over one year later, on October 29, 2010, McCoy was admitted to the emergency room at Cypress Fairbanks Medical Center with similar abdominal pain and was again diagnosed with appendicitis. He underwent a second laparoscopic appendectomy, during which an additional 4.2 centimeters of his appendix was removed.

McCoy sued Methodist, alleging both vicarious liability for the conduct of its employees and direct liability for hiring an inadequate surgeon and failing to monitor her work.[1] On September 14, 2011, McCoy timely served Methodist with an expert report by Dr. W. Owen Cramer pursuant to section 74.351(a) of the Medical Liability Act. *See* Tex. Civ. Prac. & Rem. Code § 74.351(a). Methodist objected to the sufficiency of the report, which primarily addressed McCoy's claims against Dr. Hamid-Kundi and made only limited references to Methodist. Methodist also objected to Dr. Cramer's qualifications to render an expert opinion related to the field of nursing. On November 30, McCoy served Methodist with an expert report by nurse Cecelia C. Monge and a second report by Dr. Cramer. Methodist again objected to sufficiency of these reports and to the qualifications of the experts to render some of the opinions in their respective reports, and on January 13, 2012, Methodist filed a motion to dismiss McCoy's claims against it. Following a hearing, the trial court granted McCoy a 30-day extension to cure any

---

[1] McCoy also sued Dr. Hamid-Kundi for medical malpractice.

deficiencies in the reports. After McCoy served Methodist with a second report from Monge and a third report from Dr. Cramer, Methodist filed a second motion to dismiss under section 74.351(*l*) based on the insufficient reports. The trial court denied the motion, and this interlocutory appeal followed.

## II

A medical-malpractice plaintiff must timely serve on each defendant an expert report that provides a fair summary of the expert's opinions as of the date of the report regarding (1) the applicable standards of care, (2) the manner in which the care rendered by the physician or healthcare provider failed to meet the standards, and (3) the causal relationship between that failure and the injury, harm, or damages claimed. *See* Tex. Civ. Prac. & Rem. Code § 74.351(a), (r)(6); *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 51 (Tex. 2002) (per curiam). When a plaintiff sues more than one defendant, the expert report must set forth the standard of care for each defendant and explain the causal relationship between each defendant's individual acts and the injury. *Sanjar v. Turner*, 252 S.W.3d 460, 465 (Tex. App.—Houston [14th Dist.] 2008, no pet.). This includes a hospital if a plaintiff alleges that the hospital is directly liable for its own negligence rather than only vicariously liable for an agent or employee's negligence. *Univ. of Tex. Med. Branch v. Railsback*, 259 S.W.3d 860, 864 (Tex. App.—Houston [1st Dist.] 2008, no pet.). The plaintiff may satisfy the statutory requirements by serving reports of separate experts regarding different physicians and healthcare providers or regarding different issues arising from the conduct of a physician or healthcare provider. Tex. Civ. Prac. & Rem. Code § 74.351(i); *Gannon v. Wyche*, 321 S.W.3d 881, 885 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). Only a physician, however, is qualified to render an expert opinion about the element of causation. *See* Tex. Civ. Prac. & Rem. Code §§ 74.351(r)(5)(C), 74.403(a).

3

In *American Transitional Care Centers of Texas, Inc. v. Palacios*, the supreme court explained that when considering a motion to dismiss a healthcare-liability claim because of insufficient expert reports, "[t]he issue for the trial court is whether 'the report' represents a good-faith effort to comply with the statutory definition of an expert report." 46 S.W.3d 873, 878–79 (Tex. 2001). To constitute a "good-faith effort," the report must provide enough information to fulfill two purposes: (1) It must inform the defendant of the specific conduct the plaintiff has called into question, and (2) it must provide a basis for the trial court to conclude that the claims have merit. *Id.* at 879; *Gannon*, 321 S.W.3d at 889. Because all the information relevant to the inquiry is contained within the document's four corners, the trial court should look no further than the report itself. *Palacios*, 46 S.W.3d at 878. The report need not marshal all of the plaintiff's proof, but it must include the expert's opinion on each of the elements identified in the statute. *Id.* It must also include an explanation of the basis for the expert's statements and link his conclusions to the facts. *Bowie Mem'l Hosp.*, 79 S.W.3d at 52; *Gannon*, 321 S.W.3d at 897. A report that merely states the expert's conclusions about the standard of care, breach, and causation does not satisfy the *Palacios* test and therefore does not meet the statutory requirements. *Palacios*, 46 S.W.3d at 879; *Bowie Mem'l Hosp.*, 79 S.W.3d at 53. If a sufficient expert report has not been served within the statutory period as to any defendant, the trial court must, on the motion of the affected defendant and subject to subsection (c),[2] enter an order dismissing the claim with prejudice and awarding the defendant reasonable attorney's fees and costs. Tex. Civ. Prac. & Rem. Code § 74.351(b).

---

[2] If an expert report has not been timely served because elements in the report are found deficient, the trial court may grant one 30-day extension to the claimant to cure the deficiency. Tex. Civ. Prac. & Rem. Code § 74.351(c). As discussed above, the trial court granted McCoy a 30-day extension before he offered the reports that are the subject of this appeal.

We review a trial court's denial of a motion to dismiss under section 74.351(*l*) for an abuse of discretion. *See Palacios*, 46 S.W.3d at 878. A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Larson v. Downing*, 197 S.W.3d 303, 304–05 (Tex. 2006) (per curiam). When reviewing matters committed to the trial court's discretion, we may not substitute our judgment for that of the trial court. *Bowie Mem'l Hosp.*, 79 S.W.3d at 52. But when the expert's report's conclusory statements do not satisfy the two purposes identified in *Palacios*, section 74.351(*l*) affords the trial court no discretion but to conclude that the report does not represent a good-faith effort to provide a fair summary of the statutory elements. *Palacios*, 46 S.W.3d at 880.

In its sole issue on appeal, Methodist argues the expert reports of Dr. Cramer and Monge do not evidence a good-faith effort to satisfy the requirements of section 74.351(r)(6), and therefore the trial court abused its discretion by denying Methodist's motion to dismiss McCoy's claims against it. *See* Tex. Civ. Prac. & Rem. Code § 74.351(*l*).

## A

Dr. Cramer is an expert in general surgery and specifically in diagnosing and treating patients with appendicitis. In his report, Dr. Cramer explains that the standard of care applicable to a general surgeon performing a laparoscopic appendectomy "requires the entire appendix be removed." He further opines that Dr. Hamid-Kundi's care fell below that standard because she "failed to remove the entire appendix during her appendectomy of September 6, 2009," and that Dr. Hamid-Kundi's substandard care "led directly to a recurrent episode of acute appendicitis." Specifically, Dr. Cramer explains, "Because the appendix was not fully removed bacteria was able to enter the remaining portion of the appendix and

it subsequently became infected. If Mr. McCoy did not have an appendix, like he thought, there is no chance that it could become infected."

Following this explanation, Dr. Cramer continues:

Lastly, if Dr. Monira Hamid-Kundi had a contractual relationship with San Jacinto Methodist Hospital, which is something that I cannot determine by review of the medical records, then San Jacinto Methodist Hospital would similarly be liable for the substandard acts of Dr. Hamid-Kundi as well as the subsequent medical and surgical intervention required to resolve the substandard care along with additional pain and suffering. I have also reviewed the report prepared by Cecelia C. Monge, RN, MS/HRC, DABFN, CWOCN. The negligence of San Jacinto Methodist in her report, specifically the negligence of Ms. Robin Johnson, caused damages to Aaron McCoy. Those damages would be similar to those obviously of Dr. Hamid-Kundi.

The portion of Monge's report to which Dr. Cramer refers states:

The standard of care for San Jacinto Methodist Hospital is for the operating room nurse to examine the specimen that was removed and verify that is [sic] was the entire appendix. If it was not, the operating room nurse needs to bring it to the attention of the surgeon performing the operation. Clearly Mr. McCoy's entire appendix was not removed and San Jacinto Methodist breached their [sic] standard of care by the operating room nurse not bringing that fact to the attention of the surgeon.

Monge also notes that, according to McCoy's medical records, Johnson was the operating-room nurse during the surgery. Monge expresses no opinion as to causation in her report, nor was she qualified to. *See* Tex. Civ. Prac. & Rem. Code §§ 74.351(r)(5)(C), 74.403(a).

B

With respect to McCoy's vicarious-liability claims, Methodist argues Dr. Cramer's statement that Johnson's alleged negligence "caused damages" is conclusory. Alternatively, Methodist contends that the opinion Monge provides in

6

her report effectively required Johnson to engage in the unauthorized practice of medicine.

1

Methodist alleges that Dr. Cramer's opinion is conclusory as to the causal relationship between Johnson's conduct and McCoy's injury because "Dr. Cramer gives no supporting discussion, reason, or factual detail." This argument is unpersuasive. When determining whether expert reports represent a good-faith effort to satisfy the statutory requirements, we consider them cumulatively rather than in isolation. *See* Tex. Civ. Prac. & Rem. Code § 74.351(i).

In Dr. Cramer's report, he opines that Dr. Hamid-Kundi should have removed McCoy's entire appendix and that the failure to do so caused McCoy's subsequent case of appendicitis. In Monge's report, she asserts that Johnson should have examined the specimen that Dr. Hamid-Kundi removed and verified that it was the entire appendix. If it was not, Johnson should have brought that to Dr. Hamid-Kundi's attention. When read together, the reports allege that if Johnson had realized the specimen was not McCoy's entire appendix and informed Dr. Hamid-Kundi of that fact, Dr. Hamid-Kundi should have removed the remainder of the appendix before concluding McCoy's surgery. This allegation constitutes a "good-faith effort to provide a fair summary" of the causal relationship between Johnson's actions and McCoy's injury. *See Palacios*, 46 S.W.3d at 878–79; *see also Martin v. Abilene Reg'l Med. Cntr.*, 2006 WL 241509, *4–5 (Tex. App.—Eastland 2006, no pet.) (mem. op.) (reaching a similar conclusion by reading a nursing expert's report together with a physician expert's report, even though the physician's report did not expressly address causation as to the nurse).

7

Methodist also argues that, according to Monge's opinion, Johnson had a duty to recognize and report a "strictly medical condition" which would "effectively require Nurse Johnson to engage in the unauthorized practice of law."

To support this argument, Methodist relies on *Methodist Hospital v. German*, 369 S.W.3d 333 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). In that case, the First Court of Appeals determined that the standard of care attributed to the hospital's nurse by the plaintiff's physician expert would have required them to render a medical diagnosis and thus engage in the unauthorized practice of medicine. *Id.* at 342. For that reason, the court held, the expert's testimony amounted to no evidence of the nurse's applicable standard of care. *Id.* at 343.

But *German* is an appeal from a jury verdict rather from the denial of a motion to dismiss under chapter 74. For McCoy to avoid dismissal in this case, the information in the reports do not have to meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial. *See Palacios*, 46 S.W.3d at 879. As the supreme court has explained, the legislature intended the expert-report requirements "to deter baseless claims, not to block earnest ones." *Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 631 (Tex. 2013). Based on the expert reports McCoy provided from Dr. Cramer and Monge, the trial court could have reasonably determined that McCoy's claims were not baseless and that he was entitled to proceed with his case. *See id.* ("[The appellee] demonstrated to the trial court that at least one of her alleged theories—vicarious liability—had expert support. She cleared the first hurdle, and the appeals court correctly recognized her right to have the entire case move forward.").

And despite Methodist's arguments to the contrary, we do not conclude that Johnson would have had to engage in the unauthorized practice of medicine to

determine whether the specimen was McCoy's entire appendix. The Medical Practice Act defines the term "practicing medicine" as "the diagnosis, treatment, or offer to treat a mental or physical disease or disorder or a physical deformity or injury by any system or method, or the attempt to effect cures of those conditions." Tex. Occ. Code § 151.002(a)(13). The Nursing Practice Act defines "professional nursing" as "the performance of an act that requires substantial specialized judgment and skill, the proper performance of which is based on knowledge and application of the principles of biological, physical, and social science." Tex. Occ. Code § 301.002(2).

In *German*, the standard at issue would have required nurses to diagnose a medical condition—namely, a rare adverse reaction to heparin called heparin-induced thrombocytopenia—which would have required the unauthorized practice of medicine. *See* 369 S.W.3d at 337, 342–43. In this case, however, the standard of care proposed by Monge required Johnson to determine whether the specimen was McCoy's entire appendix, not to diagnose or treat a medical condition. This standard can reasonably be understood to require the performance of an act that requires substantial specialized judgment and skill based on knowledge and application of the principles of biology, which would constitute professional nursing. *See* Tex. Occ. Code § 301.002(2). And again, expert reports need not meet the same requirements as evidence offered in a summary-judgment proceeding or at trial to avoid dismissal. *See Palacios*, 46 S.W.3d at 879.

Thus, we conclude the trial court did not abuse its discretion by determining that the expert reports constituted a good-faith effort to comply with section 74.351(r)(6) as to McCoy's vicarious-liability claim against Methodist.[3]

---

[3] Because the expert reports were sufficient as to McCoy's vicarious-liability claims, we need not address the reports' sufficiency as to McCoy's direct-liability claims against Methodist.

9

* * *

Accordingly, we conclude that the trial court did not abuse its discretion by denying Methodist's motion to dismiss and we affirm the trial court's order.

/s/    Jeffrey V. Brown
Justice

Panel consists of Chief Justice Hedges and Justices Brown and Busby.

---

*See Potts*, 392 S.W.3d at 630–31 (holding that when expert reports are sufficient as to at least one of alleged theory of liability, the plaintiff has the right to have the entire case move forward).