

# NUMBERS 13-13-00116-CV & 13-13-00117-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI ‑ EDINBURG

---

**FILIBERTO RODRIGUEZ-SALINAS, M.D.
AND CARDIO-THORACIC
SURGEONS OF MCALLEN,**                                              **Appellants,**

**v.**

**YVETTE M. CANO, ET AL.,**                                              **Appellees.**

---

### On appeal from the 445th District Court
### of Cameron County, Texas.

---

## MEMORANDUM OPINION

**Before Chief Justice Valdez, and Justices Perkes, and Wittig[1]
Memorandum Opinion by Justice Wittig**

Appellants, Filiberto Rodriguez-Salinas. M.D. & Cardiothoracic Surgeons of

---

[1] Retired Fourteenth Court of Appeals Justice Don Wittig assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to the government code. *See* TEX. GOV'T CODE ANN § 74.003 (West 2005).

McAllen, complain that the trial court erred by denying their motions to dismiss and overruling their objections to the medical expert reports of Andrew S. Wechsler, M.D. and Zoltan G. Turi, M.D.  In this accelerated appeal, appellants argue three issues:  (1) that Dr. Wechsler's report failed to address medical liability claims pled by appellees Yvette M. Cano et al.[2]; (2) that Dr. Turi lacked qualifications; and (3) that appellees did not meet the statutory requirements of the Medical Liability Act as to these reports.  We affirm the actions of the trial court.

## I. BACKGROUND

Plaintiffs' Second Amended Original Petition pled a cause of action for negligence against Dr. Rodriguez-Salinas and Cardio-Thoracic Surgeons of McAllen, *inter alios*. Specifically, paragraph 4.1 states that the cause of action for medical malpractice is premised upon a misdiagnosis and an improper course of treatment or mistreatment ending with the death of Abraham Palacios Cano.  Paragraph 4.2 alleges that defendant Blake misdiagnosed the carotid angiogram.  Appellants, together with defendant Harlingen Medical Center and defendant Eduardo D. Flores, M.D., began an improper course of treatment premised upon the misdiagnosis.  Paragraph 4.3 alleges appellants performed procedures and surgeries that were unnecessary and negligently elected to perform the several procedures all in one setting.  Paragraph 4.4 alleges appellants and Harlingen Medical Center negligently failed to diagnose the patient's retroperitoneal bleed, and negligently allowed the patient to exsanguinate.

Appellees filed two expert reports, one by Dr. Wechsler and another by Dr. Turi.

---

[2] Appellees include Yvette M. Cano, individually and as representative of the estate of Abraham Palacios Cano, deceased, Mary Helen Cano, Liza Battah, Anna James, and Michelle Proctor.

Appellants filed objections and a motion to dismiss as to both reports. The trial court denied the objections and motions to dismiss. This interlocutory appeal ensued.

## II. STANDARD OF REVIEW

The Medical Liability Act requires a claimant to file an expert report "[i]n a health care liability claim." *Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 630–31 (Tex. 2013) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a)). Once an expert report is timely served and properly challenged, the trial court: shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report. *Id.*; Tex. CIV. PRAC. & REM. CODE § 74.351(l); *Loaisiga v. Cerda*, 379 S.W.3d 248, 260 (Tex. 2012). A valid expert report has three elements: it must fairly summarize the applicable standard of care; it must explain how a physician or health care provider failed to meet that standard; and it must establish the causal relationship between the failure and the harm alleged. *Id.*; TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6); *Scoresby v. Santillan*, 346 S.W.3d 546, 556 (Tex. 2011). A report that satisfies these requirements, even if as to one theory only, entitles the claimant to proceed with a suit against the physician or health care provider. *Potts*, 392 S.W.3d at 630.

The expert report serves two functions. "First, the report must inform the defendant of the specific conduct the plaintiff has called into question. Second, and equally important, the report must provide a basis for the trial court to conclude that the claims have merit." *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 879 (Tex. 2001).

3

A report need not cover every alleged liability theory to make the defendant aware of the conduct that is at issue. *Potts*, 392 S.W.3d at 630–31. *Palacios* recognized that an expert report does not require litigation-ready evidence. *See* 46 S.W.3d. at 879. "[T]o avoid dismissal . . . [t]he report can be informal in that the information in the report does not have to meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial." *Id.* For the particular liability theory addressed, the report must sufficiently describe the defendant's alleged conduct, which both informs a defendant of the behavior in question and allows the trial court to determine if the allegations have merit. *Potts*, 392 S.W.3d at 631. If the trial court decides that a liability theory is supported, then the claim is not frivolous and the suit may proceed. *Id.*

We review the denial of a motion to dismiss under an abuse of discretion standard. *Palacios*, 46 S.W.3d at 877 (a district court "abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles"); *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (per curiam) (*citing Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). We likewise review a trial court's determination of whether a physician is qualified to opine in a health care liability case under an abuse of discretion standard. *Larson v. Downing*, 197 S.W.3d 303, 304–05 (Tex. 2006) (per curiam); *Mem'l Hermann Healthcare Sys. v. Burrell*, 230 S.W.3d 755, 757 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

### III. ANALYSIS

Appellants argue that Dr. Wechsler's report fails to address any theories of liability in appellees' petition. They argue from *Palacios* that the report must inform them

4

regarding the specific conduct called into question. *See* 46 S.W.3d at 879. Closer in point to appellants' argument, appellants cite *Windsor v. Maxwell*, 121 S.W.3d 42, 51 (Tex. App.—Fort Worth 2003, pet. denied) (holding that to inform the defendant of the specific conduct the plaintiff has called into question, the report must support the cause of action alleged by the plaintiff in its pleadings). Appellants go on to argue that the only criticisms in Dr. Wechsler's report were the failure to dictate intelligible operative notes and that Dr. Rodriguez-Salinas failed to administer sufficient cardioplegia during the procedure. According to appellants, these two criticisms do not address the theories of liability pled. They cite *Qi* for the proposition that the report need not address each and every action or omission mentioned in the pleadings but must address at least one liability theory. *See Univ. of Tex. Med. Branch at Galveston v. Qi*, 370 S.W.3d 406, 415 (Tex. App.—Houston [14th Dist.] 2012, no pet.). We agree in part.

The Wechsler report states that the patient Abraham Cano, M.D., 67, was diagnosed with moderately severe aortic stenosis with symptoms of increasing fatigue and shortness of breath. Cano was noted to have three-vessel coronary artery disease with excellent ventricular function. The survival rate for patients with this condition is greater than 90% if the patient is treated in accordance with the standard of care. The initial part of the operation proceeded without apparent adverse affects. Dr. Rodriguez-Salinas applied an aortic cross-clamp at 10:45 and used both antegrade and retrograde cardioplegia. The cross-clamp was released at about 13:45 indicating the period of ischemic arrest was three hours. At the time of the release, left ventricular function was poor and the patient could not be sustained off cardiopulmonary bypass.

5

Five units of red blood cells were transfused. Bulging of the patient's diaphragm was noted, the right groin was explored, and the femoral artery repaired. There was severe coagulopathy and massive blood transfusions were given.

The pleadings indicated the defendants negligently failed to diagnose the patient's retroperitoneal bleed and negligently allowed the patient to exsanguinate. In paragraph 4.1, it is also alleged that a misdiagnosis and an improper course of treatment or mistreatment ended with the death of Cano.[3] The report stated that Dr. Cano's poor heart function at the termination of the procedure was proximately caused by the defendants' departure from the standard of care in failing to provide adequate myocardial protection. The effective administration of cardioplegia (heart arresting and preserving solution) is a critical component of cardiac operations, particularly when performed on hypertrophied hearts with coronary artery disease. The initial dose of 400ml was too low for effective preservation of a hypertrophied heart. Only a portion of the cardioplegia administered actually gains access to the heart muscle. The given doses of 300ml over a three hour period were inadequate. The total amount of cardioplegia administered during the three hours was only 2000ml. The time required to deliver the intermittent 300ml doses (after the initial dose) also suggests improper placement of the retrograde cardioplegia catheter. The standard of care required diligence in the frequent and effective delivery of the cardioplegic solution which Dr. Rodriguez-Salinas failed to do. The failure to meet this standard of care caused damage to the patient by causing loss of heart function. The report states that acceptable doses of cardioplegia, more or less,

---

[3] Appellants fail to address these allegations in their brief.

should have been one liter at inception of the cross clamp interval with additional doses of 500ml every 15-20 minutes. "The flow rate should have been a minimum of 150-200ml/minutes rather than the calculated flow rate which is estimated at 60ml/minute." The multiple departures from the standard of care were negligent, which in reasonable medical probability proximately caused the death of Cano.

We agree with appellants that Dr. Wechsler's report does not appear to address the allegations in paragraph 4.2 and 4.3 of the second amended petition. However, as we view the petition paragraphs 4.1 and 4.4, they allege causes of action addressed in the report. The allegations include claims that appellants and Harlingen Medical Center negligently allowed the patient to exsanguinate and paragraph 4.1 states that the cause of action for medical malpractice is premised in part on an improper course of treatment or mistreatment ending with the death of Cano. While these pleadings may be subject to special exceptions, the second amended petition was superseded by a third amended petition filed March 6, 2013, during the pendency of this appeal. *See* TEX. R. CIV. P. 91. Claims raised in the second amended petition's paragraphs 4.1 and 4.4 are adequately addressed in Dr. Wechsler's report. In particular the allegation of improper treatment or mistreatment ending in the death of Cano is appropriately addressed by the report. Any complaints by appellants regarding the sufficiency of these pleadings is best addressed by special exceptions. *See id.*

We conclude that the trial court did not abuse its discretion in overruling appellants' objections and denying their motion to dismiss. Dr. Wechsler's report satisfies the expert report requirements because it "provides a fair summary of the expert's opinions as of the

7

date of the report regarding applicable standards of care, the manner in which the care rendered by the physician failed to meet the standards, and the causal relationship between the failure and the injury, harm or damages claimed." TEX. CIV. PRAC. & REM. CODE § 74.351(r)(6); *Scoresby*, 346 S.W.3d at 556. It appears to us that the report represents an objective good faith effort to comply with the definition of an expert report. Tex. CIV. PRAC. & REM. CODE ANN. § 74.351(l); *Loaisiga*, 379 S.W.3d at 260.

The second expert report filed by plaintiffs was prepared by Dr. Turi, who is board certified in internal medicine, cardiovascular disease, and interventional cardiology. Dr. Turi is not board certified in cardiothoracic surgery (not necessarily required) and neither his curriculum vitae nor his report demonstrate that he had experience in the particular type of cardiac surgery performed or that he taught the surgical procedure at issue in this case (also not necessarily required). Appellants argue that the trial court erred by not holding Turi to be unqualified. *See Larson*, 197 S.W.3d at 304 (holding that under the abuse of discretion standard, close calls must go to the trial court). However, in light of Dr. Wechsler's satisfactory report, the issue is not necessary to our holding and we need not address this question. *See* TEX. R. APP. P. 47.1.

In their third and final issue, appellants argue the trial court's ruling is in error because of appellees' failure to meet the statutory requirements. Essentially, appellants reiterate their arguments addressed above. They additionally cite *Carreras v. Trevino*, 298 S.W.3d 721, 726 (Tex. App.—Corpus Christi, 2009, no pet.) (holding the report inadequate because it did not demonstrate qualifications to render an expert medical opinion in this case). They also cite *Palacios* for the application of the abuse of

8

discretion standard for dismissal and qualifications for the expert report. *Palacios*, 46 S.W.3d at 877–80.   See our discussion above on the application of these principles.

## IV. CONCLUSION

Because the appellees produced an expert report that adequately addressed at least one pled liability theory, the statutory requirements are satisfied, and "the trial court must not dismiss in such a case."   *Potts*, 392 S.W.3d at 632.   We affirm the orders of the trial court.


Don Wittig
Justice


Delivered and filed the
12th day of September, 2013.