**Opinion issued June 26, 2025**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-25-00025-CV

———————————

**TEXAS CHILDREN'S HOSPITAL, Appellant**

**V.**

**TARSHELL SCOTT, INDIVIDUALLY AND AS SURVIVING PARENT AND REPRESENTATIVE OF THE ESTATE OF D. S., A DECEASED MINOR, Appellee**

---

**On Appeal from the 80th District Court**
**Harris County, Texas**
**Trial Court Case No. 2024-00780**

---

## MEMORANDUM OPINION

Tarshell Scott's disabled 17-year-old daughter was discharged from Texas Children's Hospital ("TCH") with a laceration to her labia that required readmittance within 24 hours. Scott later sued TCH for negligence and gross

negligence. The trial court denied TCH's motion to dismiss Scott's claims based on the alleged inadequacy of the expert report, and TCH appealed. In a single issue, TCH argues that the trial court erred by denying its motion to dismiss because Scott's expert report—required by statute to survive a motion to dismiss—was not a good faith effort to comply with the statute and constituted no report at all.

We conclude that the expert report was a good faith effort to comply with the statute, and the court did not err by denying the motion to dismiss. We affirm.

## Background

Tarshell Scott's daughter, D.S., was a 17-year-old girl "with a history of static cerebral palsy due to neonatal HSV encephalitis with functional quadriplegia." She required total care "due to chronic lung disease, asthma, acute and chronic hypoxemic and hypercarbic respiratory failure." She had a tracheostomy, and she was dependent on a ventilator and a G-tube.

D.S. was admitted to TCH from October 11, 2021, to October 20, 2021, for increased respiratory support. She was diagnosed with rhinovirus, H. Influenzae pneumonia, and a urinary tract infection. While in the hospital, she received increased oxygen support with increased airway clearance, and she was treated with a more advanced mechanical ventilator. She also received antibiotic therapy. Hospital providers noted that D.S. had "multiple scratch marks" including

2

scratches on her left clavicle, near her G-tube, and a severe wound behind her left ear that, since May 2021, had been continually reopened by D.S.'s scratching. During her stay, D.S. scratched her nose and made it bleed. D.S. was incontinent, and she used diapers throughout her hospital stay.

During her stay, multiple physicians examined her genitourinary tract and noted that there was no rash in the pubic area. Between October 11 and October 20, 2021, genitourinary exams performed by nurses were documented as normal (aside from incontinence and usage of diapers), and documentations of diaper changes, including on the day D.S. was sent home, showed no abnormalities. Skin assessments throughout this hospitalization showed only breakdown of skin on D.S.'s left ear, stoma, and nose.

The hospital discharged D.S. around 11:00 a.m. on October 20, 2021, and Scott noticed blood spotting in D.S.'s diaper when they arrived home.[1] The bleeding worsened the next day, and around 10:30 a.m. on October 21, 2021, Scott noticed a laceration on D.S.'s vaginal area, specifically her left labia. Scott took D.S. back to TCH. D.S. had a fever when she arrived at the emergency department, and the hospital performed an infectious workup.

---

[1]     The background section of the expert report indicates that TCH gave Scott "[o]utpatient wound care supplies and instructions . . . for wound care of [D.S.'s] ear." The report does not expressly indicate whether TCH provided the supplies and instructions in connection with discharging D.S. on October 20, 2021, or at some other time to allow Scott to care for D.S. while she was hospitalized.

TCH Pediatric Gynecology providers examined the injury and found "healing granulation tissue indicating that the injury was more than 24 hours old." They noted in D.S.'s records that "an injury of this depth would not be caused b[y] scratching one's self." TCH Gynecology providers prescribed antibiotics, topical therapy, and good wound care.

"Due to the nature and no clear mechanism of injury," TCH involved its Child Protection Team, its social work department, and Child Protective Services to investigate the situation. Scott denied that D.S. had experienced abuse or trauma, and the investigators confirmed that the two other children who lived in the home with Scott and D.S., who were ten and fourteen years old at the time, had been at school most of the prior day when D.S. returned from the hospital. Scott told multiple hospital caregivers that she believed the laceration occurred while D.S. was hospitalized. During both hospitalizations, a sitter was assigned to be with D.S. 24 hours a day. During the second hospitalization, D.S.'s sitters were required to be female. After noting that CPS had previously closed two cases concerning the mother, it "cleared" D.S. to go home with Scott the next day, October 22, 2021.[2]

On January 4, 2024, Scott filed suit against Texas Children's Hospital. She alleged that TCH caused "injuries and damages to Plaintiff by virtue of their

_____

[2]    D.S. later died for reasons unrelated to the subject matter of the lawsuit.

4

negligence and gross negligence and the treatment of D.S." She alleged that TCH was liable for the actions of its employees and contractors under theories of respondeat superior and vicarious liability, among others. Scott alleged that TCH committed fraud, negligence, and gross negligence by failing "to exercise that degree of care, which an ordinarily prudent health care provider would have exercised and fraudulent concealment of the cause of severe laceration" to D.S.'s vagina and labia. Among other things, Scott alleged that TCH:

- failed "to properly treat and diagnose D.S.'s l[a]bia laceration";

- "failed to engage in recognized and acceptable practices in the medical profession to limit the likelihood and probability of infection following the treatment provided by [TCH]";

- breached "acceptable standards for care of patients in the nursing profession by failing to properly take and document vitals, observe significant changes in the patient's condition and alert a physician; by failing to properly assess [D.S.'s] needs and evaluate [her] medical condition . . . by failing to implement a proper course of nursing care based upon the existing condition of the patient; by failing to document a significant change in [D.S.'s] symptoms on the medical chart."

Scott also alleged that TCH was directly liable for negligent supervision and training.

TCH answered with a general denial and affirmative defenses on February 5, 2024.

Scott served TCH with a CV and expert report from Dr. Timothy Carroll, on May 31, 2024. TCH objected to the expert report and moved to dismiss under

5

Chapter 74 of the Texas Civil Practice and Remedies Code. TCH argued that the expert report was insufficient as to the elements of standard of care, breach, and proximate cause, and that it was not a good faith effort to comply with the statute. TCH argued that the expert report did not fairly summarize Dr. Carroll's opinions about how the TCH providers breached an applicable standard of care and that it was conclusory about breach. TCH also asserted that Dr. Carroll's opinions were conclusory because his report failed to link his conclusions to the facts or identify how the alleged failure to document the laceration caused "D.S.'s alleged injuries," especially in light of Dr. Carroll's admission that "it is unclear" how D.S. sustained the laceration. Though TCH conceded that Scott timely served the expert report, it argued that the report was so inadequate that TCH was entitled to dismissal, attorney's fees, and court costs.

In her response to the motion to dismiss, Scott clarified that she was seeking compensation not only for D.S.'s injuries but also for the emotional distress she suffered when her daughter was readmitted for a labia laceration. She argued that the expert report was sufficient as to standard of care, breach, and causation, and constituted a good faith effort to comply with the statute. She asked the trial court to deny the motion to dismiss or, in the alternative, give her an opportunity to amend with 30 days' notice of the deficiency in the report.

The trial court denied the motion to dismiss, finding that the expert report "complies with the statutory requirements of Chapter 74." TCH appealed.

**Analysis**

In a single issue on appeal, TCH argues that the trial court abused its discretion by denying its motion to dismiss because the expert report was not a good-faith effort to comply with the statute.

**I.      TMLA Requires an Expert Report.**

"The Texas Medical Liability Act requires healthcare liability claimants to serve a defendant healthcare provider with a timely and adequate expert report." *Walker v. Baptist St. Anthony's Hosp.*, 703 S.W.3d 339, 342 (Tex. 2024) (citing TEX. CIV. PRAC. & REM. CODE § 74.351(a), (l)); *accord Bush v. Columbia Med. Ctr. of Arlington Subsidiary, L.P.*, No. 23-0460, 2025 WL 1478330, at *4 (Tex. May 23, 2025). "An expert report is adequate if it 'represent[s] an objective good faith effort' to provide a 'fair summary of the expert's opinions . . . regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.'" *Walker*, 703 S.W.3d at 342–43 (quoting TEX. CIV. PRAC. & REM. CODE § 74.351(l), (r)(6)). "A report demonstrates a good-faith effort when it (1) inform[s] the defendant of the specific conduct called into question and (2) provides a basis for

7

the trial court to conclude the claims have merit.'" *Walker*, 703 S.W.3d at 343 (cleaned up).[3] "No particular words or formality are required, but bare conclusions will not suffice." *Scoresby v. Santillan*, 346 S.W.3d 546, 556 (Tex. 2011) (cleaned up).

"An expert report adequately articulates the elements of standard of care and breach when it 'set[s] forth specific information about what the defendant should have done differently; that is, what care was expected, but not given.'" *Bush*, 2025 WL 1478330, at *4–6 (quoting *Uriegas v. Kenmar Residential HCS Servs., Inc.*, 675 S.W.3d 787, 790 (Tex. 2023)) A hospital's standard of care "is what an ordinarily prudent hospital would do under the same or similar circumstances." *Am. Transitional Care Centers of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 880 (Tex. 2001). A report satisfies the causation requirement by making a good faith effort to show how proximate cause will be proven by explaining how and why the breach of the standard of care caused the injury in question. *Bush*, 2025 WL 1478330, at *4–5. A report is adequate as to causation when the expert explains the basis of his statements by linking his conclusions to specific facts. *Id.* The expert report does not, however, have to conclusively prove causation or meet the evidentiary standards of a summary judgment or for admission of evidence at trial. *Id.*

---

[3] *Accord Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 223 (Tex. 2018); *Baty v. Futrell*, 543 S.W.3d 689, 693–94 (Tex. 2018).

## II.    Early Dismissal Under the TMLA

A defendant may seek dismissal of the plaintiff's claims when no report is served within 120 days after the defendant's original answer is filed or when the elements of the served report are deficient. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(b). When, as in this case, a defendant challenges a plaintiff's expert report as deficient, the TMLA provides the trial court with two options: grant one 30-day extension of time to allow the plaintiff to cure the deficiencies in the report or grant the motion to dismiss. *See id.* § 74.351(c) (extension); *id.* § 74.351(*l*) ("A court **shall** grant a motion challenging the adequacy of an expert report **only** if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report in Subsection (r)(6)." (Emphasis added)).

We review a trial court's ruling on a motion to dismiss under section 74.351(*l*) for an abuse of discretion. *Walker*, 703 S.W.3d at 343. In analyzing a report's sufficiency, courts must consider only the information contained within "the four corners of the report, taken as a whole." *E.D. by & through B.O. v. Tex. Health Care, P.L.L.C.*, 644 S.W.3d 660, 664 (Tex. 2022). "An expert report that adequately addresses at least one pleaded liability theory satisfies the statutory requirements, and the trial court must not dismiss in such a case." *Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 632 (Tex. 2013).

9

**III. Dr. Carroll's report was a good faith effort with regard to the claims of negligence and gross negligence.**

TCH argues that the report was deficient and that it failed to fairly summarize the standard of care, breach, or causation. We disagree.

TCH argues on appeal that Dr. Carroll's report is silent as to standards of care and conclusory as to breach. In particular, TCH asserts that Dr. Carroll's statement that TCH fell below the standard of care by failing to prevent and note a significant genital laceration of a patient was not specific enough to describe a standard of care or how it was breeched. TCH contends that the expert report does not explain what steps should have been taken to prevent the laceration or under what circumstances it should have noted the existence of the laceration.

As to causation, TCH emphasizes that the expert report itself states that it was unclear from the records how D.S. sustained a labial laceration. TCH also asserts that Dr. Carroll's statement connecting the second admission to the fact that TCH failed to note the laceration during the first admission was conclusory because it does not explain how the failure to note the injury caused the harm.

We disagree with TCH's assessment of the expert report.

The expert report and CV established Dr. Carroll's education, training, and experience as a board certified, pediatric critical care physician familiar with the standards of care for treatment of a patient with medical conditions similar to D.S.'s in a children's hospital. He states that the standards of care include "being

10

able to properly care for and document any injuries." Dr. Carroll summarizes the care that D.S. received while she was inpatient for 11 days. D.S. was: (1) constantly monitored by a sitter; (2) treated for, among other things, a urinary tract infection; and (3) repeatedly given genitourinary exams and diaper changes by providers. The expert report states that the providers not only failed to document the 5 centimeter laceration to D.S.'s left labia, but they documented her genitourinary exams as "normal" with the exception of incontinence. The report also stated that it was physicians at TCH who concluded the laceration could not have been self-inflicted and would have occurred during D.S.'s earlier hospital stay.

Dr. Carroll opined that TCH fell below the standards of care by failing to prevent, observe, and document the injury. Dr. Carroll explained that, as a result of these failures, D.S. was discharged to go home with her mother, only to be readmitted the next day when she presented to the emergency room with a fever and in need of "treatment to prevent significant infection or further injury." Reading the report as a whole, we conclude that it provided context for when a laceration should have been noted, i.e., during the many repeated genitourinary examinations. The report explains that TCH provided wound care supplies and instructions for the wound behind D.S.'s ear during her first hospitalization, and it only provided wound care for the labia laceration–which was not noted during the

11

first hospitalization–when D.S. returned to the hospital within 24 hours of her discharge. Dr. Carroll summarized his opinion on standard of care, breach, and causation by stating:

> Texas Children's Hospital fell below the standard of care by failing to prevent and failing to note a significant genital laceration of a patient in their care. Multiple nurses, physicians and nurse practitioners examined [D.S.] and failed to note any injury to her genitals despite multiple examinations. Further because the injury was not noted, the mother took the child home with a significant injury requiring readmission for care, evaluation and treatment to prevent significant infection or further injury.

TCH's assessment of the expert report focuses on the injury of the laceration itself, but Scott's petition is not so limited. Rather, Scott's petition implicates both the labia laceration as well as TCH's allegedly deficient observation and treatment of the laceration before discharge. *See* Clerk's R. 10. Considering the report as a whole, we conclude that it informs TCH of the conduct that Scott has called into question: TCH failed to note a significant genital laceration and discharged D.S. without care for an injury that doctors at TCH concluded occurred during a hospitalization and was not self-inflicted.[4]

---

[4] Although we conclude that the expert report in this case is adequate, we agree with TCH that the report in this case, as is true in many cases in which the adequacy of an expert report is challenged, could have been more specific. A report that identifies the expert's opinions, organized by each statutory element and each alleged injury or theory of liability pled may be helpful to a court reviewing it for compliance with a statute. However, the Supreme Court of Texas has explained numerous times that the standard imposed by the Legislature at this early stage of litigation is a lenient one, designed to 'weed out' unmeritorious claims while allowing potentially meritorious litigation to proceed, and not requiring the use of

We conclude that the expert report informed TCH of the specific conduct Scott has called into question and provided a basis for the trial court to conclude that the claims have merit. *See Walker*, 703 S.W.3d at 342. We therefore hold that the trial court did not abuse its discretion by denying the motion to dismiss. *See id.* at 343.

## Conclusion

We affirm the trial court's order.

Susanna Dokupil
Justice

Panel consists of Justices Guerra, Gunn, and Dokupil

---

any specific 'magic' words in the expert report itself. *E.g.*, *Walker v. Baptist St. Anthony's Hosp.*, 703 S.W.3d 339, 343 (Tex. 2024). We decline to apply the statutory standard in a way that departs from Supreme Court precedent. *See Dallas Area Rapid Transit v. Amalgamated Transit Union Local No. 1338*, 273 S.W.3d 659, 666 (Tex. 2008) (recognizing as fundamental that Supreme Court decisions are binding on lower courts).