Roosevelt TAYLOR, Jr.,
M.D., Appellant,

v.

LaToya FOSSETT, Appellee.

No. 05–09–01271–CV.

Court of Appeals of Texas,
Dallas.

Aug. 25, 2010.

J. Wade Birdwell, D. Michael Wallach, Leslie Ann Dillon Thomas, Wallace, Andrews & Stouffer, P.C., Fort Worth, TX, for Appellant.

Douglas Michael Wood, Law Firm of Douglas Wood, Dallas, TX, for Appellee.

Before Justices MOSELEY, BRIDGES and FILLMORE.

## OPINION

Opinion By Justice FILLMORE.

This interlocutory appeal follows the trial court's refusal to dismiss LaToya Fossett's health care liability claims against Roosevelt Taylor, Jr., M.D. Dr. Taylor contends the trial court erred by denying his motion to dismiss, which challenged the sufficiency of Fossett's initial and supplemental expert reports, and by denying him attorney's fees and costs. We reverse the

trial court's order and remand to the trial court for the limited purposes of determining Dr. Taylor's reasonable attorney's fees and costs and for entry of a final order dismissing Fossett's claims with prejudice.

## Background

Given the procedural posture of this case, we draw the facts from the allegations in Fossett's petition. On November 1, 2006, Fossett was admitted under Dr. Taylor's care to Mesquite Community Hospital for induction of labor. There were complications with the delivery and Dr. Taylor performed a cesarean section birth. A few days later, an infection developed in the cesarean section incision. According to Fossett, Dr. Taylor failed to culture the infection and failed to document abdominal fascial integrity during Fossett's hospitalization. Fossett was discharged from the hospital on November 4, 2006. She was seen by Dr. Taylor in his office three days later on November 7, 2006. Dr. Taylor evaluated Fossett's condition and prescribed the oral antibiotic Keflex. According to Fossett, Dr. Taylor failed at that time to culture the incision infection and to document abdominal fascial integrity. On November 9, 2006, Fossett went to the Baylor Hospital Emergency Department. She was diagnosed with cellulitis, hospitalized, and placed on intravenous antibiotics. A bacterial culture showed the infection to be methicillin resistant staphylococcus aureus (MRSA). Fossett was hospitalized for two weeks. While hospitalized, Fossett underwent two surgical procedures relating to wound dehiscence and drainage from the incision. According to Fossett, she continues to suffer bowel and abdominal pain, has permanent scarring and disfigurement of her abdomen, and will require plastic surgery.

Fossett filed suit against Dr. Taylor. Fossett alleges that Dr. Taylor's failure

following a caesarian section to timely diagnose and treat her for an incision infection, wound dehiscence and cellulitis involving MRSA proximately caused her to suffer injuries and otherwise avoidable surgical intervention. Fossett contends Dr. Taylor was negligent in (1) failing to diagnose incision infection, wound dehiscence and cellulitis; (2) failing to timely communicate with the patient and document cellulitis; and (3) failing to document abdominal fascial integrity, obtain bacterial cultures, evaluate for and administer appropriate medical care, including hospitalization, and treat spreading cellulitis.

Pursuant to section 74.351 of the Texas Civil Practice and Remedies Code, Fossett served Dr. Taylor with an expert report prepared by Dr. Adam S. Levine, a practicing obstetrician and gynecologist, in support of her claims. In his expert report, Dr. Levine asserted that Dr. Taylor deviated from the accepted standard of care for post-operative surgical wound infection and his deviations from the standard of care were the proximate cause of Fossett's complications and injuries. In his report, Dr. Levine stated:

Dr. Taylor provided LaToya Fossett with ante- and post- natal care. Dr. Taylor performed LaToya Fossett's cesarean section, which included making the surgical incision which ultimately became infected. Dr. Taylor breached the standard of care because: 1) neither a weight nor a blood pressure were recorded on the first post-operative visit for LaToya Fossett; 2) aside from a foul odor and draining, no information was recorded with regard to when the pain became worse, when the drainage began, or whether there was any redness or swelling; 3) no documentation was provided with regard to the size or extent of the wound infection and there was no documentation regarding fascial integrity; 4) no bacterial wound cultures were taken; 5) Dr. Taylor prophylactically prescribed the same antibiotics that had no impact earlier in LaToya Fossett's pregnancy; 6) Dr. Taylor failed to order re-evaluation within 24 to 48 hours and instead ordered it for a week later; 7) Dr. Taylor ordered wound compresses but failed to document or instruct LaToya Fossett any (sic) form of wound care, irrigation or cleaning.

Because Dr. Taylor documented a surgical wound infection with "copious pus" and failed to provide LaToya Fossett with treatment in accord with the standard of care, Fossett required admission to Baylor Hospital. Unfortunately, this admission was within 48 hours of Dr. Taylor's evaluation and order to follow-up one week later. At Baylor Hospital, LaToya Fossett was evaluated according to the standard of care and ultimately subjected to two surgical wound explorations, a prolonged hospital stay, a larger incision and scar, and long-standing abdominal pain. Had Dr. Taylor appropriately evaluated and treated LaToya Fossett in a timely fashion according to the standard of care, she might have been admitted to the hospital earlier and required only one, if any, surgical wound explorations (sic). She would most likely not have required two surgeries. Had Dr. Taylor appropriately evaluated and treated LaToya Fossett she would not have required as prolonged a hospital stay because the infection got worse each day and smaller infections are easier to treat than larger infections.

Dr. Taylor's failure to meet to (sic) the applicable standard of care, as described above, in all medical probability, was the proximate cause of the injuries LaToya Fossett suffered. As a result of Dr. Taylor's failure to meet the applicable standard of care LaToya Fossett re-

quired: 1) At least one surgical wound exploration that might not have been necessary; 2) A hospital stay that was longer than should have been necessary had she been admitted 48 hours sooner; 3) A longer recovery than should have been necessary had she been admitted 48 hours sooner; 4) a larger scar; and 5) continued abdominal pain and discomfort.

Dr. Taylor challenged the legal sufficiency of Dr. Levine's report as failing to comply with the statutory requirements of section 74.351 and moved to dismiss Fossett's health care liability claims with prejudice pursuant to section 74.351(b). *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b) (Vernon Supp. 2009) (if health care liability claimant does not serve expert report as required, the trial court must, upon motion by affected health care provider or physician, dismiss claim with prejudice). He argued the report was legally insufficient to satisfy the statutory requirements because Dr. Levine's opinions regarding the alleged violations of the standard of care and the alleged causal connection between such violations and injuries and damages claimed by Fossett were conclusory. After a hearing, the trial court concluded Dr. Levine's report was insufficient under section 74.351. The trial court, however, granted Fossett a thirty-day extension under section 74.351(c) "to cure a causation deficiency" in her expert's report:

namely, whether in Dr. Levine's opinion, Dr. Taylor's failure to meet the appropriate standard of care in post-surgical wound care more likely than not or within reasonable medical probability caused LaToya Fossett to have one or more exploratory surgeries. The current language in the report is insufficient regarding the exploratory surgeries.

*See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(c) (trial court may grant extension to party that failed to serve expert report because timely served report found to be deficient). The trial court overruled any other objections to the report.

Within the thirty-day extension period, Fossett served a supplemental report prepared by Dr. Levine. Dr. Levine's supplemental report stated:

My original opinions regarding the medical care Dr. Taylor provided LaToya Fossett remain unchanged. Dr. Taylor failed to meet an appropriate standard of care for a post-surgical wound. Specifically, Dr. Taylor failed to timely examine, culture, investigate or treat what was an obvious post-surgical wound complication. Dr. Taylor's failure to examine, culture, investigate or treat LaToya Fossett's surgical wound more likely than not and within a reasonable degree of medical probability caused LaToya Fossett to have one or more exploratory surgeries and debridements. Dr. Taylor should have appropriately examined LaToya Fossett.

Further, Dr. Taylor should have recognized the possibility of MRSA infection because MRSA infections are common iatrogenic infections in hospitals. Had Dr. Taylor examined or cultured LaToya Fossett's surgical wound, Dr. Taylor might have properly diagnosed MRSA and begun treatment with appropriate antibiotic therapy it (sic) is more likely than not that LaToya Fossett would not have required subsequent surgeries which resulted in significant pain and permanent scarring.

Finally, it is my opinion, based on a reasonable degree of medical probability, that Dr. Taylor deviated from the accepted standard of care in this case and that his deviations from the standard of care caused LaToya Fossett's injuries.

Dr. Levine's supplemental report added one opinion on causation that was not contained in his original report: "Had Dr. Taylor examined or cultured LaToya Fossett's surgical wound, Dr. Taylor might have properly diagnosed MRSA and begun treatment with appropriate antibiotic therapy it (sic) is more likely than not that LaToya Fossett would not have required subsequent surgeries which resulted in significant pain and permanent scarring."

Dr. Taylor again objected to the report and moved to dismiss Fossett's claims for failure to serve a sufficient expert report under section 74.351. He contended that Dr. Levine's opinions set forth in his original and supplemental reports, whether the reports are considered separately or collectively [1], were conclusory and lack sufficient factual specificity with regard to the violations of the standard of care alleged against Dr. Taylor and the alleged causal connection between any such violations and the injuries and damages claimed by Fossett. He further contended that the supplemental report, like the original report, merely concluded that Dr. Taylor caused Fossett's injuries by breaching the standard of care. After a hearing, the trial court found that the expert report of Dr. Levine was sufficient and satisfied the requirements of section 74.351. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 74.351(*l*), 74.351(r)(6).

The trial court denied Dr. Taylor's motion to dismiss. Pursuant to section 51.014(a)(9) of the civil practice and remedies code, Dr. Taylor brought this interlocutory appeal challenging the trial court's denial of his motion to dismiss. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(9) (Vernon 2008).

## Standard of Review and Applicable Law

■■■ Dr. Taylor asserts the trial court abused its discretion when it denied his motion to dismiss because Dr. Levine's original and supplemental expert reports, whether considered separately or collectively, are legally and factually insufficient and conclusory. We review a trial court's order on a motion to dismiss a health care liability claim for an abuse of discretion. *See Am. Transitional Care Ctrs. of Texas v. Palacios,* 46 S.W.3d 873, 875 (Tex.2001); *Nexion Health at Terrell Manor v. Taylor,* 294 S.W.3d 787, 791 (Tex.App.-Dallas 2009, no pet.). A trial court has no discretion in determining what the law is or in applying the law to the facts. *See Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992) (orig.

1. Dr. Levine expressly incorporated the opinions he expressed in his original expert report in his supplemental expert report. On appeal, Fossett contends that "taken together," Dr. Levine's original and supplemental reports comply with the statutory requirements of section 74.351. Reports may be considered together in determining whether a claimant provided a report meeting the statutory requirements. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(i); *see also, Packard v. Guerra,* 252 S.W.3d 511, 527 (Tex.App.-Houston [14th Dist.] 2008, pet. denied) ("If a plaintiff can rely on more than one report to satisfy the standard of care, breach, and causation, we see no violation of section 74.351(i) just because a plaintiff attempted to cure an insufficient report with supplemental reports and

refiled expert reports some of which initially were found to be insufficient.").

We disagree with Fossett's argument on appeal that Dr. Taylor is precluded from raising objections to Dr. Levine's initial report because Dr. Taylor did not seek relief from this Court at the time of the trial court's order regarding that report. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(9) (Vernon 2008) (no appeal may be taken from trial court's order granting extension under section 74.351(c)); *see also, Ogletree v. Matthews,* 262 S.W.3d 316, 321 (Tex.2007) (in cases where report that implicated health care provider's conduct was served and trial court granted extension under section 74.351(c), appellate courts are without jurisdiction to reach merits of motion to dismiss).

proceeding). An abuse of discretion occurs if the trial court clearly fails to analyze or apply the law correctly. *Id.*

Under section 74.351 of the civil practice and remedies code, any person who brings suit asserting a health care liability claim must, within 120 days of filing the original petition, provide an expert report for each physician or health care provider against whom a claim is asserted. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a). "Expert report" means a written report that provides a fair summary of the expert's opinions as to the applicable standards of care, the manner in which the care rendered failed to meet those standards, and the causal relationship between that failure and the injury, harm, or damages claimed. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(r)(6); *see also, Bowie Mem'l Hosp. v. Wright,* 79 S.W.3d 48, 52 (Tex.2002). An expert report must provide enough information to fulfill two purposes if it is to constitute an objective, good faith effort to comply with the definition of an expert report under section 74.351(r)(6). The report must inform the defendant of the specific conduct the plaintiff has called into question and must provide a basis for the trial judge to conclude the claims have merit. *Leland v. Brandal,* 257 S.W.3d 204, 206–07 (Tex.2008); *Palacios,* 46 S.W.3d at 879.

An expert report need not marshal all the plaintiff's proof. *Wright,* 79 S.W.3d at 52. However, it must do more than merely state the expert's conclusions about the standard of care, breach, and causation; it must explain the basis of the expert's statements and link his conclusions to the facts. *Id.* The report must contain sufficiently specific information to demonstrate causation beyond conjecture. *See, Farishta v. Tenet Healthsystem* Hosps. Dallas, Inc., 224 S.W.3d 448, 453 (Tex.App.-Fort Worth 2007, no pet.). The report must not be conclusory in its explanation of causation; it must explain the basis of its statements sufficiently to link its conclusions to the facts. *Wright,* 79 S.W.3d at 52; *Quinones v. Pin,* 298 S.W.3d 806, 810 (Tex.App.-Dallas 2009, no pet.); *see also, Arkoma Basin Exploration Co. v. FMF Assocs. 1990-A, ,Ltd.,* 249 S.W.3d 380, 389 n. 32 (Tex.2008) (quoting BLACK'S LAW DICTIONARY 308 (8th ed. 2004)) (defining conclusory as "[e]xpressing a factual inference without stating the underlying facts on which the inference is based"). Thus, courts have reasoned that an expert report that describes causation in terms of mere possibilities does not accomplish the purpose of providing "a basis for the trial court to conclude that the claims have merit." *Wright,* 79 S.W.3d at 52; *see also Quinones,* 298 S.W.3d at 815–16.

In determining whether a report complies with the requirements of section 74.351(r)(6), the court may not look beyond the report itself, because all information relevant to the inquiry should be contained within the document's four corners. *Wright,* 79 S.W.3d at 52; *Nexion Health at Terrell Manor,* 294 S.W.3d at 791. A trial court must grant a motion to dismiss a plaintiff's claims for failure to file an adequate expert report only if it appears to the court, after hearing, that the report does not represent an objective good-faith effort to comply with the statutory definition of an expert report. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(l ); *see also, Palacios,* 46 S.W.3d at 878.

## Analysis

Dr. Levine opined in his original report[2] that Dr. Taylor breached the ap-

---

2. Dr. Levine's original report contains numerous purported breaches of the standard of

plicable standard of care by failing to order re-examination of Fossett within 24 to 48 hours of her post-operative office visit, causing Fossett to suffer (1) at least one surgical wound exploration that might not have been necessary, along with resulting scarring and continued pain and discomfort and (2) hospitalization and recovery that was more lengthy "than should have been necessary had she been admitted [to the hospital] 48 hours sooner." Dr. Levine's supplemental report added the opinion that had Dr. Taylor examined or cultured Fossett's surgical wound, he might have properly diagnosed MRSA and begun treatment with appropriate antibiotic therapy, thereby avoiding subsequent surgeries, pain, and permanent scarring.

Dr. Levine's supplemental report incorporated his original report. Therefore, in this analysis we collectively refer to the original and supplemental reports as Dr. Levine's "report." Dr. Levine's report emphasized the significance of the 24 to 48 hour period following Fossett's office evaluation by Dr. Taylor:

> Because of the possibility of worsening infection resulting in significant morbidity and mortality, [women with post-operative surgical incision] require both careful and frequent assessment of their surgical wounds every 24 to 48 hours by qualified personnel such as their physician, by wound management personnel, or by home health nursing.

> Antibiotics for minor infections may be given by mouth; provided the patient is seen within 24 to 48 hours to assess that the infection is not getting worse.

> Dr. Taylor failed to either admit LaToya Fossett to the hospital or to re-evaluate her within 24 to 48 hours [of Fossett's office evaluation by Dr. Taylor].

> The standard of care for evaluation and treatment of a post-operative surgical wound infection require[s] ... either admitting the patient to a hospital or arranging for close outpatient follow-up and re-evaluation within 24 to 48 hours....

According to Dr. Levine's report, Fossett was hospitalized "within 48 hours" of her post-operative visit in Dr. Taylor's office. Fossett's arrival at Baylor Hospital occurred within the time frame Dr. Levine determined a re-evaluation to be appropriate and consistent with the applicable standard of care. Had Dr. Taylor scheduled Fossett for re-evaluation 48 hours after her post-operative office visit, consistent with the standard of care articulated by Dr. Levine, the progression of Fossett's infection and wound dehiscence presumably would have been no more advanced or severe than the condition actually treated at Baylor Hospital following Fossett's arrival at the hospital within that same 48-hour period.

Dr. Levine did not assert in his report that had Fossett been re-evaluated by Dr. Taylor within 48 hours of her post-operative office visit, she would have avoided hospitalization and surgical treatment. Rather, Dr. Levine opined that the duration of Fossett's hospitalization and recovery would not have been longer than it "should have been." Dr. Levine provided no facts in his report concerning the expected duration of Fossett's hospitalization and recovery in the absence of the alleged negligence of Dr. Taylor. Accordingly, Dr. Levine's report presented no factual basis for a conclusion that Dr. Taylor's alleged negligence resulted in a period of hospitalization and recovery that was longer than it would have been in the absence of such alleged negligence.

---

care by Dr. Taylor. Here, the analysis is dedicated to Dr. Levine's opinions concerning alleged breaches of the standard of care that he asserts caused injury or damage.

■ Dr. Levine's report claimed that as a result of Dr. Taylor's failure to meet the applicable standard of care, Fossett required at least one surgical wound exploration that might not have been necessary, sustained a larger scar from additional surgery and suffered continued pain and discomfort. He asserted that if Dr. Taylor had "appropriately evaluated and treated Fossett in a timely fashion according to the standard of care, she *might* have been admitted to the hospital earlier and required only one, if any, surgical wound explorations (sic). She would most likely not have required two surgeries." (Emphasis added.) Again, Dr. Levine's standard of care did not call for wound re-evaluation until up to 48 hours from the time of Fossett's post-operative office visit with Dr. Taylor. Within 48 hours of Fossett's office visit with Dr. Taylor, she was being treated at Baylor Hospital. Accordingly, Dr. Levine's report presented no factual basis for a conclusion that Dr. Taylor's alleged negligence resulted in surgical procedures, scarring, and pain that would not have occurred in the absence of such alleged negligence. Moreover, Dr. Levine's report suggested only that in the absence of the alleged negligence, Fossett *might* have been admitted to the hospital earlier and required only one, if any, surgical wound exploration. A description of only a possibility of causation is not sufficient to satisfy requirements concerning the necessary content of an expert report. *See Wright,* 79 S.W.3d at 53.

Dr. Levine's report claimed that had Dr. Taylor examined or cultured Fossett's surgical wound, he *might* have properly diagnosed MRSA and begun treatment with appropriate antibiotic therapy, thereby avoiding subsequent surgeries, pain, and permanent scarring. This attempt to establish causation also suffers from the infirmity that it presents only a possibility of causation. *See id.* Dr. Levine's report

presented no factual basis for a conclusion that had Dr. Taylor examined or cultured Fossett's surgical wound, properly diagnosed MRSA, and begun treatment with appropriate antibiotic therapy, the subsequent surgical procedures, pain, and permanent scarring would have been avoided.

Dr. Levine's report omitted any factual explanation of how any act or omission by Dr. Taylor in delaying diagnosis and treatment of Fossett's condition for no more than 48 hours proximately caused additional complications or surgical interventions. Dr. Levine explained neither the impact of the alleged 48–hour delay in re-evaluation of Fossett on the nature and severity of the underlying infection nor in what manner the infection developed or changed in that period of time necessitating surgery that otherwise would not have been required. Dr. Levine's report left the trial court to infer that the alleged delay in diagnosis and treatment proximately caused the additional surgery, pain and scarring without actually providing a factual basis for the trial court to so infer. *Cf. Mosely v. Mundine,* 249 S.W.3d 775, 780 (Tex.App.-Dallas 2008, no pet.) (comparative description of nodule and growth of mass after two-year delay in diagnosis provided factual basis for conclusion that failure to identify nodule led to invasive and aggressive treatment claimant underwent).

Dr. Levine's report failed to articulate a causal connection between Dr. Taylor's care of Fossett and the injuries that allegedly resulted. Dr. Levine's statements concerning causation are conclusory, suggest only the possibility of causation, and are unsupported by a factual basis within the four corners of the report. Considering the report and applicable law, we conclude the report constitutes a factually and legally insufficient basis for the trial court to determine whether Fossett's claims have merit. *See Leland,* 257 S.W.3d at

206–07. We conclude the trial court abused its discretion in denying Dr. Taylor's motion to dismiss based on an inadequate expert report.

■■■ Dr. Taylor asserts the trial court abused its discretion in failing to award him attorney's fees and costs. Section 74.351(b) requires that if an expert report has not been served within the statutorily required period of time, upon the motion of the affected physician or health care provider, the trial court shall enter an order awarding reasonable attorney's fees and costs and dismiss the claim with prejudice. Tex. Civ. Prac. & Rem.Code Ann. § 74.351(b); *see also, Hernandez v. Ebrom,* 289 S.W.3d 316, 318 (Tex.2009) ("If a timely and sufficient report is not served, the trial court must award the provider its attorney's fees and costs and dismiss the case with prejudice."). Having concluded that the trial court should have granted Dr. Taylor's motion to dismiss as to Fossett's claims, under section 74.351(b) of the civil practice and remedies code, the trial court erred in denying Dr. Taylor's request for reasonable attorney's fees and costs of court. Accordingly, we sustain Dr. Taylor's assertion of entitlement to his reasonable attorney's fees and costs under section 74.351(b).

### Conclusion

We reverse the trial court's order denying Dr. Taylor's motion to dismiss. We remand this case to the trial court for the limited purposes of determining and awarding Dr. Taylor reasonable attorney's fees and costs and for entry of a final order dismissing Fossett's claims against Dr. Taylor with prejudice.