# NO. 12-18-00352-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *DARRY G. MEYER, D.O., AND DARRY G. MEYER, D.O., P.A.,*<br>*APPELLANTS* | § | *APPEAL FROM THE 217TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *ANSEL STRAHAN,*<br>*APPELLEE* | § | *ANGELINA COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Darry G. Meyer, D.O. and Darry G. Meyer, D.O., P.A. (collectively "Dr. Meyer") appeal the trial court's order denying their motion to dismiss Ansel Strahan's suit against them. We affirm.

## BACKGROUND

On July 23, 2015, Strahan complained of pain in his left side and a noticeable bulge in his left inguinal area. Strahan went to see Dr. Meyer, who determined Strahan required surgery to repair a hernia. The surgical consent form stated that Strahan was to undergo a "Unilateral Inguinal Hernia Repair, Robotic Left Inguinal Hernia Repair" and contained a clause that authorized Dr. Meyer to perform additional operations that are necessary or advisable. Surgery began the same day at Memorial Medical Center of East Texas (Memorial Medical). According to Dr. Meyer, during the procedure, he encountered a hernia on Strahan's right side. After the surgery, Dr. Meyer informed Strahan that the right-side hernia was repaired as well, even though Strahan never complained of any pain on his right side. Strahan was discharged.

The following day, Strahan experienced severe abdominal pain and swelling. He returned to the emergency room at Memorial Medical. A CT scan revealed that Strahan was hemorrhaging in his abdomen. On July 26, an additional surgery was performed during which the left-side

inguinal mesh and the corresponding blood clots were removed. Strahan was then transferred to the intensive care unit. Strahan alleges he suffered serious and permanent injuries as a result of his stay at Memorial Medical.[1]

Strahan brought a healthcare liability claim against Dr. Meyer. He contends Dr. Meyer lacked consent to perform the right-side hernia repair and that the extra surgery caused the subsequent hemorrhaging. In an attempt to comply with Section 74.351 of the Texas Civil Practice and Remedies Code, Strahan served Dr. Meyer with an expert report and curriculum vitae of Dr. David Befeler. Dr. Meyer filed objections to Dr. Befeler's report, including an objection that Dr. Befeler's report was insufficient as to causation, and a motion to dismiss Strahan's claim. The trial court allowed Dr. Befeler to supplement his report in accordance with Section 74.351(c) to cure deficiencies regarding the standard of care and causation. After Dr. Befeler timely supplemented his report, Dr. Meyer renewed his objections and again moved for dismissal. Following a hearing, the trial court overruled the objections and denied the motion. This appeal followed.

## EXPERT REPORT

In his sole issue, Dr. Meyer contends the trial court abused its discretion when it denied his motion to dismiss. Specifically, Dr. Meyer urges that Dr. Befeler's report does not adequately address whether the right-side hernia repair caused the hemorrhaging.

## Standard of Review

A trial court's ruling on qualifications of a medical expert and the sufficiency of an expert's report under Chapter 74 is reviewed for an abuse of discretion. *Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001). A trial court abuses its discretion if it acts without reference to guiding rules or principles. *Van Ness*, 461 S.W.3d at 142. However, in exercising its discretion, it is incumbent upon the trial court to review the report, sort out its content, resolve any inconsistencies, and decide whether the report demonstrated a good faith effort to show that the plaintiff's claims have merit. *See id.* at 144. When reviewing factual matters committed to the trial court's discretion, an appellate court may not substitute its judgment for that of the trial court.

---

[1] In addition to his claims against Dr. Meyer, Strahan alleges he received substandard care while at Memorial Medical. Those claims are not part of this appeal and Memorial Medical is not a party to this appeal.

*Gray v. CHCA Bayshore L.P.*, 189 S.W.3d 855, 858 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

**Expert Report Requirements**

The Texas Medical Liability Act requires a claimant to serve an expert report early in the proceedings on each party against whom a health care liability claim is asserted. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (West 2017). The Texas Supreme Court has explained that "eliciting an expert's opinions early in the litigation [is] an obvious place to start in attempting to reduce frivolous lawsuits." *Palacios*, 46 S.W.3d at 877. The purpose of evaluating expert reports is to deter frivolous claims, not to dispose of claims regardless of their merits. *See Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 631 (Tex. 2013). A valid expert report must fairly summarize the applicable standard of care; explain how a physician or health care provider failed to meet that standard; and establish a causal relationship between the failure and the harm alleged. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6) (West 2017); *Potts*, 392 S.W.3d at 630.

A report need not cover every alleged liability theory to make the defendant aware of the conduct at issue, nor does it require litigation ready evidence. *Potts*, 392 S.W.3d at 631–32. The report can be informal in that the information in the report does not have to meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial. *Id.* For the particular liability theory addressed, the report must sufficiently describe the defendant's alleged conduct. *Id.* Such a report both informs a defendant of the behavior in question and allows the trial court to determine if the allegations have merit. *Id.* If the trial court decides that a liability theory is supported, then the claim is not frivolous, and the suit may proceed. *Id.* If a health care liability claim contains at least one viable liability theory, as evidenced by an expert report meeting the statutory requirements, the claim cannot be frivolous. *Id.*

**Causation**

A causal relationship is established by proof that the negligent act or omission was a substantial factor in bringing about the harm, and that, absent this act or omission, the harm would not have occurred. *Costello v. Christus Santa Rosa Health Care Corp.*, 141 S.W.3d 245, 249 (Tex. App.—San Antonio 2004, no pet.). Causation is often established in medical malpractice cases through evidence of a "reasonable medical probability" or "reasonable probability" that the alleged injuries were caused by the negligence of one or more defendants. *Jelinek v. Casas*, 328 S.W.3d 526, 532–33 (Tex. 2010). In other words, the plaintiff must present evidence "that it is

3

'more likely than not' that the ultimate harm or condition resulted from such negligence." *Id.* (quoting *Kramer v. Lewisville Mem'l Hosp.*, 858 S.W.2d 397, 399–400 (Tex. 1993)). An expert may show causation by explaining a chain of events that begins with a defendant doctor's negligence and ends in injury to the plaintiff. *See McKellar v. Cervantes*, 367 S.W.3d 478, 485 (Tex. App.—Texarkana 2012, no pet.).

A report is deficient if it states only the expert's conclusions about the standard of care, breach of the standard of care, or causation. *See Ortiz v. Patterson*, 378 S.W.3d 667, 671 (Tex. App.—Dallas 2012, no pet.). An expert cannot simply opine that the breach caused the injury. *Van Ness*, 461 S.W.3d at 142; *Jelinek*, 328 S.W.3d at 539. Rather, the report must explain, to a reasonable degree, how and why the breach of the standard of care caused the injury based on the facts presented. *Van Ness*, 461 S.W.3d at 142; *Jelinek*, 328 S.W.3d at 539–40. The report must explain the basis of the expert's statements to link his conclusions to the facts. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002); *see also Taylor v. Fossett*, 320 S.W.3d 570, 575 (Tex. App.—Dallas 2010, no pet.) (expert report must contain sufficiently specific information to demonstrate causation beyond conjecture).

In determining whether the expert report represents a good faith effort to comply with the statutory requirements, the court's inquiry is limited to the four corners of the report. *Christian Care Ctrs., Inc. v. Golenko*, 328 S.W.3d 637, 641 (Tex. App.—Dallas 2010, pet. denied) (citing *Palacios*, 46 S.W.3d at 878). "We may not 'fill gaps' in an expert report by drawing inferences or guessing what the expert likely meant or intended." *Hollingsworth v. Springs*, 353 S.W.3d 506, 513 (Tex. App.—Dallas 2011, no pet.). "We determine whether a causation opinion is sufficient by considering it in the context of the entire report." *Ortiz*, 378 S.W.3d at 671.

**Analysis**

Dr. Meyer argues that Dr. Befeler's report is deficient because it does not adequately summarize the causal relationship between the right-side hernia repair and Strahan's injuries. Dr. Meyer further posits that Dr. Befeler's statements regarding causation are conclusory and do not address whether Strahan may have suffered the same complications if the right-side hernia repair had not occurred.

Dr. Befeler's reports, in relevant part, state as follows:

> As of July 23, 2015, Mr. Strahan was a 78 year old male with a history of myeloproliferative disorder, a disease of the bone marrow and blood. In Mr. Strahan's case, he had Essential Thrombocythemia that meant that the number of platelets in his blood is much higher than normal

while other blood cell types are normal. The extra platelets make the blood "sticky" which slows down the blood flow and can cause clotting and then hemorrhaging as the platelets are abnormal in function. General surgeons such as [Dr. Befeler] and Dr. Meyer are taught to be familiar with these conditions as these patients are at increased risks of bleeding and thrombosis….

…

[O]n 7/23/2015, Ansel J. Strahan, Jr. was admitted to the outpatient surgery center of the Memorial Medical Center of East Texas for the purpose of undergoing a left inguinal hernia repair to be performed by Dr. Darry Meyer. … By way of history, Mr. Strahan was suffering some pain in the left inguinal area with a noticeable bulging from that same area. The intended surgery that Dr. Meyer has discussed with Mr. Strahan involved only the repair of the left inguinal hernia and the consent form signed by Mr. Strahan preoperatively reflected that the intended surgery was for a "Unilateral Inguinal Hernia, Robotic Left Inguinal Hernia Repair." Prior to 7/23/2015, Mr. Strahan had experienced no pain or problems in the right inguinal area. Preoperatively, Mr. Strahan's medical records do not reflect any complaints or problems in Mr. Strahan's right inguinal area.

…

…Of note, the surgical consent form signed by Mr. Strahan includes a paragraph that Dr. Meyer would have the authority to perform additional operations on Mr. Strahan that may be deemed necessary or advisable in the diagnosis and treatment of the named patient. This clause, by the standard of care, is reserved for the surgeon to have permission to operate on life threatening conditions that are discovered during the course of an operation. … It was neither necessary nor advisable to perform an elective right inguinal hernia repair, assuming a right inguinal hernia existed, in a patient like Mr. Strahan with a pre-existing significant platelet condition.

…

Postoperatively, Dr. Meyer informed Mr. Strahan and his family that he had not limited the surgical procedure to a repair of the left inguinal hernia; rather, he claimed to have discovered an inguinal hernia on the right side, where Mr. Strahan had never had any pain, never had any bulge, and had been completely asymptomatic from any right hernia symptoms, and for which Mr. Strahan had never given specific surgical consent.

…

On 7/24/2015, the following day, Mr. Strahan apparently begin [sic] experiencing severe abdominal pain, increased abdominal swelling, and returned to the emergency room at Memorial Medical Center of East Texas, with a pain assessment graded at 10/10. … A CT scan was ordered by the ER physician, which showed that Mr. Strahan had developed acute hemorrhaging in his abdomen. … The CT scan of the abdomen and pelvis revealed an acute hematoma superior to the left inguinal canal, 8.4 cm in maximum diameter….

…

…Mr. Strahan was eventually taken back to surgery for an exploratory laparotomy at 1433 hours on July 26. During that procedure, Dr. Cole removed the left inguinal mesh repair and evacuated the blood clots. Following the surgery, Mr. Strahan was admitted to the PCU with an NG tube, IVs, a Foley catheter, and was apparently incapable of doing any repositioning without nursing assistance.

…

5

During the performance of the left inguinal hernia repair, no life threatening event or emergent situation developed that made the performance of a right inguinal herniorrhaphy indicated to be done without specific consent by the patient. The standard of care would be for Dr. Meyer to finish the left inguinal herniorrhaphy and allow Mr. Strahan to recover, re-examine his alleged right sided inguinal hernia and discuss with the patient his options for treatment. The standard of care in treating a patient with this platelet disorder would also be to avoid prolonging surgery and making multiple unnecessary incisions. By unnecessary incisions, [Dr. Befeler is] referring to the additional incisions required to perform surgery on the alleged right-sided inguinal hernia….

Dr. Meyer's decision to perform a bilateral hernia repair in light of Mr. Strahan's pre-existing condition was a direct and proximate cause of Mr. Strahan's internal hemorrhaging. It is reasonably foreseeable to a general surgeon that performing additional surgery than what was originally intended and consented for on a patient with a pre-existing platelet condition puts that patient at an increased risk of bleeding at any surgical site, and can result in the exact type of injury that Mr. Strahan suffered.

…

The standard of care required Dr. Meyer to only perform the left inguinal hernia repair for which he had received the informed consent of Mr. Strahan, and to not perform a right inguinal hernia repair, which was asymptomatic, not causing Mr. Strahan any pain or medical problem, and for which Dr. Meyer had not obtained Mr. Strahan's signed, written consent. The bilateral hernia repairs prolonged the surgery, and according to Dr. Meyer's operative report, during the surgery, a tear occurred in the inguinal peritoneum on the right side that required further repair. … Further, the surgical procedure selected by Dr. Meyer was incorrect and deviated from the standard of care. A single incision in the left inguinal area was all that was required - not all of the incisions made by Dr. Meyer in performing a laparoscopic surgery. This error on Dr. Meyer's part was also a deviation of the standard of care and was medically causative of the hematoma and postoperative bleeding suffered by Mr. Strahan and the subsequent hospitalization and subsequent exploratory laparotomy surgery performed by Dr. [Melvin] Cole.

We first address Dr. Meyer's argument that Dr. Befeler's reports are required to rule out all possible causes of Strahan's abdominal bleeding. We disagree. Section 74.351 requires the medical expert's report to provide a fair summary of his opinions regarding the causal relationship and the injury, harm, or damages claimed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6). Nothing in Section 74.351 suggests the preliminary report is required to rule out every possible cause of the injury, harm or damages claimed, especially given that Section 74.351(s) limits discovery before the report is filed. *Baylor Med. Ctr. at Waxahachie, Baylor Health Care Sys. v. Wallace*, 278 S.W.3d 552, 562 (Tex. App.—Dallas 2009, no pet.). Furthermore, the expert report need not prove the entire case or account for every known fact; the report is sufficient if it makes "a good-faith effort to explain, factually, how proximate cause is going to be proven." *Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 224 (Tex. 2018).

Second, we conclude that Dr. Befeler's reports provide a basis for the trial court to conclude that Strahan's negligence claim has merit. *See Wright*, 79 S.W.3d at 52; *see also Palacios*, 46 S.W.3d at 879. Dr. Befeler sets forth that Strahan suffered from a preexisting condition, essential

thrombocythemia, which placed him at a higher risk for bleeding from surgical procedures. For this reason, prolonging surgery and making unnecessary incisions, such as the incisions required to repair the right-sided inguinal hernia, should be avoided. According to Dr. Befeler, the clause regarding additional operations, by the standard of care, is reserved for life threatening conditions discovered during an operation. Yet, Strahan never had pain or a bulge in his right side and was "completely asymptomatic from any right hernia symptoms." Thus, because of Strahan's preexisting condition, Dr. Befeler explained that, absent a life threatening or emergent situation, Dr. Meyer should have completed the left inguinal herniorrhaphy, allowed Strahan to recover, re-examined the alleged right-side inguinal hernia, and discussed treatment options with Strahan. Instead, Dr. Meyer's prolonging the surgery by completing the alleged right-side hernia repair could, and did, cause clots and hemorrhaging at any surgical site, which includes the left-side hernia repair.

The ultimate evidentiary value of the opinions proffered by Dr. Befeler is a matter to be determined at summary judgment and beyond. At this stage we do not require a claimant to marshal all his proof or present evidence in the report as if he were actually litigating the merits. *Palacios*, 46 S.W.3d at 879. Accordingly, we hold that Dr. Befeler's reports, when read together, constitute an objective, good faith effort to comply with Chapter 74's requirement to provide a fair summary of his opinion with respect to the causal relationship between Dr. Meyer's alleged breach and Strahan's injury. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(*l*), (r)(6).

Based on the foregoing, we hold the trial court did not abuse its discretion in denying Dr. Meyer's motion to dismiss. Dr. Meyer's sole issue is overruled.

## DISPOSITION

Having overruled Dr. Meyer's sole issue, we *affirm* the trial court's order.

JAMES T. WORTHEN
Chief Justice

Opinion delivered April 10, 2019.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

7



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**APRIL 10, 2019**

**NO. 12-18-00352-CV**

**DARRY G. MEYER, D.O., AND DARRY G. MEYER, D.O., P.A.,**
Appellants
V.
**ANSEL STRAHAN,**
Appellee

Appeal from the 217th District Court
of Angelina County, Texas (Tr.Ct.No. CV-00688-17-10)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the trial court's order denying Meyer's motion to dismiss.

It is therefore ORDERED, ADJUDGED and DECREED that the order of the court below **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the Appellants, **DARRY G. MEYER, D.O., AND DARRY G. MEYER, D.O., P.A.,** for which execution may issue, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*