# NO. 12-21-00050-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *EAST TEXAS PHYSICIANS ALLIANCE, LLP, D/B/A MAGNOLIA HEALTH SYSTEMS URGENT CARE CLINIC, AND K. MCWHERTER, FNP, APPELLANTS* | § | *APPEAL FROM THE 369TH* |
| | § | *JUDICIAL DISTRICT COURT* |
| *V.* | | |
| *BRADLEY A. SUTTON, APPELLEE* | § | *ANDERSON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

East Texas Physicians Alliance, d/b/a Magnolia Health Systems Urgent Care Clinic, and K. McWherter, FNP (collectively "Appellants") appeal the trial court's order denying their motion to dismiss Bradley A. Sutton's suit against them. We reverse and render.

## BACKGROUND

On February 20, 2017, Sutton, a trooper with the Texas Department of Public Safety, visited the Magnolia Systems Urgent Care Clinic in Palestine, seeking treatment for hemorrhoids. Sutton was dressed in uniform when he approached the reception counter. When asked what care he needed, Sutton told the receptionist that he needed to see a doctor for a problem with his foot. Sutton then completed the required forms and asked for the location of the restroom. When he returned, Sutton asked the receptionist for a piece of paper on which he wrote that his problem concerned his "butt" rather than his foot. He then asked the receptionist to convey the true issue to the provider privately. Sutton then retired to the waiting room until he was called for examination. Kay McWherter, a family nurse practitioner, treated Sutton for hemorrhoids. Sutton received a work release for February 20 through February 27.

1

The next day, one of Sutton's friends went to the same clinic. The friend sent Sutton the following via text message:

Friend: Guess where we are? DaTaDa! Urgent Care, she should've went last week but she's hard headed

Sutton: LOL

Friend: I'm outside cause there are sick people in there…someone could make extra $ here, this place needs to be pressure washed. Rumor has it there was a Trooper here yesterday with hemroids [sic]

Sutton: Yep

Friend: Was it you?

Sutton: Yes

Friend: One of my customers was there for "Swollen Nuts" he said he really embarrassed because of the lady nurse practitioner until he was told about the Trooper…….that made him feel a lil better

Sutton: LOL

In February 2019, Sutton brought a healthcare liability claim against Magnolia Urgent Care and McWherter. Sutton's suit alleges McWherter violated the Health Insurance Portability and Accountability Act (HIPAA) and the Texas Nursing Board Standards of Practice. The claims against Magnolia Urgent Care are via respondeat superior. In an attempt to comply with Section 74.351 of the Texas Civil Practice and Remedies Code, Sutton served Appellants with an expert report and curriculum vitae of Jarrod Kanady, a family nurse practitioner. Appellants filed objections to Kanady's report and a motion to dismiss Sutton's claim. The trial court allowed Kanady to supplement his report in accordance with Section 74.351(c) to cure deficiencies regarding standard of care, breach, and causation. After Kanady supplemented his report, Appellants renewed their objections and again moved for dismissal. The trial court denied Appellants' motion. This appeal followed.

## EXPERT REPORT

In two issues, Appellants contend the trial court abused its discretion when it denied the motion to dismiss. Specifically, their first issue urges the report fails to adequately address

2

causation and their second issue attacks the sufficiency of the report's standard of care explanation.

**Standard of Review**

A trial court's ruling on qualifications of a medical expert and the sufficiency of an expert's report under Chapter 74 is reviewed for an abuse of discretion. *Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001). A trial court abuses its discretion if it acts without reference to guiding rules or principles. *Van Ness*, 461 S.W.3d at 142. However, in exercising its discretion, it is incumbent upon the trial court to review the report, sort out its content, resolve any inconsistencies, and decide whether the report demonstrated a good faith effort to show that the plaintiff's claims have merit. *See id.* at 144. When reviewing factual matters committed to the trial court's discretion, an appellate court may not substitute its judgment for that of the trial court. *Gray v. CHCA Bayshore L.P.*, 189 S.W.3d 855, 858 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

**Expert Report Requirements**

The Texas Medical Liability Act requires a claimant to serve an expert report early in the proceedings on each party against whom a health care liability claim is asserted. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (West 2017). The Texas Supreme Court has explained that "eliciting an expert's opinions early in the litigation [is] an obvious place to start in attempting to reduce frivolous lawsuits." *Palacios*, 46 S.W.3d at 877. The purpose of evaluating expert reports is to deter frivolous claims, not to dispose of claims regardless of their merits. *See Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 631 (Tex. 2013). A valid expert report must fairly summarize the applicable standard of care; explain how a physician or health care provider failed to meet that standard; and establish a causal relationship between the failure and the harm alleged. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6) (West 2017); *Potts*, 392 S.W.3d at 630.

A report need not cover every alleged liability theory to make the defendant aware of the conduct at issue, nor does it require litigation ready evidence. *Potts*, 392 S.W.3d at 631–32. The report can be informal in that the information in the report does not have to meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial. *Id.* For the particular liability theory addressed, the report must sufficiently describe the defendant's alleged

conduct. *Id.* Such a report both informs a defendant of the behavior in question and allows the trial court to determine if the allegations have merit. *Id.* If the trial court decides that a liability theory is supported, then the claim is not frivolous, and the suit may proceed. *Id.* If a health care liability claim contains at least one viable liability theory, as evidenced by an expert report meeting the statutory requirements, the claim cannot be frivolous. *Id.*

**Causation**

A causal relationship is established by proof that the negligent act or omission was a substantial factor in bringing about the harm, and that, absent this act or omission, the harm would not have occurred. *Costello v. Christus Santa Rosa Health Care Corp.*, 141 S.W.3d 245, 249 (Tex. App.—San Antonio 2004, no pet.). Causation is often established in medical malpractice cases through evidence of a "reasonable medical probability" or "reasonable probability" that the alleged injuries were caused by the negligence of one or more defendants. *Jelinek v. Casas*, 328 S.W.3d 526, 532–33 (Tex. 2010). In other words, the plaintiff must present evidence "that it is 'more likely than not' that the ultimate harm or condition resulted from such negligence." *Id.* (quoting *Kramer v. Lewisville Mem'l Hosp.*, 858 S.W.2d 397, 399–400 (Tex. 1993)). An expert may show causation by explaining a chain of events that begins with a defendant doctor's negligence and ends in injury to the plaintiff. *See McKellar v. Cervantes*, 367 S.W.3d 478, 485 (Tex. App.—Texarkana 2012, no pet.).

A report is deficient if it states only the expert's conclusions about the standard of care, breach of the standard of care, or causation. *See Ortiz v. Patterson*, 378 S.W.3d 667, 671 (Tex. App.—Dallas 2012, no pet.). An expert cannot simply opine that the breach caused the injury. *Van Ness*, 461 S.W.3d at 142; *Jelinek*, 328 S.W.3d at 539. Rather, the report must explain, to a reasonable degree, how and why the breach of the standard of care caused the injury based on the facts presented. *Van Ness*, 461 S.W.3d at 142; *Jelinek*, 328 S.W.3d at 539–40. The report must explain the basis of the expert's statements to link his conclusions to the facts. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002); *see also Taylor v. Fossett*, 320 S.W.3d 570, 575 (Tex. App.—Dallas 2010, no pet.) (expert report must contain sufficiently specific information to demonstrate causation beyond conjecture).

In determining whether the expert report represents a good faith effort to comply with the statutory requirements, the court's inquiry is limited to the four corners of the report. *Christian Care Ctrs., Inc. v. Golenko*, 328 S.W.3d 637, 641 (Tex. App.—Dallas 2010, pet. denied) (citing

*Palacios*, 46 S.W.3d at 878). "We may not 'fill gaps' in an expert report by drawing inferences or guessing what the expert likely meant or intended." *Hollingsworth v. Springs*, 353 S.W.3d 506, 513 (Tex. App.—Dallas 2011, no pet.). "We determine whether a causation opinion is sufficient by considering it in the context of the entire report." *Ortiz*, 378 S.W.3d at 671.

## Analysis

Appellants' second issue argues that Kanady's report is deficient because it does not adequately establish the standard of care allegedly breached. Appellants further urge in their first issue that Kanady's causation analysis is based on unsupported allegations and not facts.

Kanady's amended report, in relevant part, states as follows:

**Standard of Care**

HIPAA's Privacy and Security Rules were created by Congress to ensure patients' personal health information would be kept private and not published or disseminated to third parties and the public in general. HIPAA standards are recognized as a standard of care by which to judge a health care provider's actions, and these standards can also be used to establish a legal duty of care.

Such a standard of care has been promulgated and upheld in Texas through the Texas Nursing Board Position Statement 15.29 – "Professional Boundaries including use of Social Media:"

A. "The Texas Board of Nursing (BON or Board) in keeping with its mission to protect the public health, safety, and welfare, holds nurses accountable for knowing, recognizing, and maintaining professional boundaries of the nurse-patient/client relationship [22 TAC Section 217.11 (I) (J)]. The term professional boundaries is as: The appropriate limits which should be established by the nurse/client relationship due to the nurse's power and the patient's vulnerability. Professional boundaries refers to the provision of nursing service within the limits of the nurse/client relations which promote the client's dignity, independence and best interests and refrain from inappropriate involvement in the client's personal relationships and/or the obtainment of the nurse's personal gain at the client's expense [22 TAC Section 217. 1(29)].

B. "Duty of a Nurse in Maintenance of Professional Boundaries – There is a power differential between the nurse and the patient. The patient depends on the knowledge of the nurse and relies on the nurse to advocate for the patient and to ensure actions are taken in the patient's best interest. The nurse has a duty to protect the patient, including establishing and maintaining professional boundaries in the nurse-patient/client relationship. Under or over involvement may be harmful to the patient and interfere with the nurse-patient relationship. Visualizing the two ends of the spectrum may assist the nurse in knowing, recognizing and maintaining the professional boundaries of the nurse-patient relationships."

There is a clearly established standard of care, through both federal and state law, for nurses as it affects their patients when it concerns the public disclosure of a patient's medical information, thus invading the patient's privacy, resulting in harm and humiliation to the patient. A breach of such standard of care can be avoided by the nurse/medical provider by maintaining the privacy of the patient's medical history and not disclosing to third parties or those who [are] not involved with the patient's medical care.

**Deviation from the Standard of Care**

The standard of care as to the confidentiality and the right to privacy of Trooper Sutton was not maintained by Nurse McWherter, an employee of Magnolia Health Systems Urgent Care and the person responsible for examining and treating Trooper Sutton for his hemorrhoids, when she disclosed and informed others about Trooper Sutton's condition and gave enough about this patient that it became public knowledge he had been treated by Nurse McWherter (and therefore, Magnolia Health Systems Urgent Care) for "the worst hemorrhoids that she had ever seen." In the nursing and medical profession, the first rule of treatment is always "Do No Harm," first and foremost. Nurse McWherter and her employer breached this standard of care as to Trooper Sutton and violated his right to privacy.

**Damages Caused by Breach of the Standard of Care**

Trooper Sutton obviously did not want anyone other than those treating his hemorrhoids to know about his condition. That was exhibited by the cautious manner in which he acted toward the clinic receptionist and explained his problem. Nurse McWherter, who examined him and then gave him a one-week work release, caused harm to Trooper Sutton by disclosing the medical problem he was experiencing and making light of it to another patient.

It is my opinion Nurse McWherter deviated from the standard of care and this deviation resulted in personal embarrassment and mental anguish for Trooper Sutton. Nurse McWherter also breached confidentiality and failed to maintain Trooper Sutton's privacy and personal dignity, as outlined in the Texas Board of Nursing Position Statement 15.29, while treating Trooper Sutton on February 20, 2017, and in her subsequent interactions with other patients in the following days. This constituted a breach of HIPAA and confidentiality standards set her own credentialing board and standards within the nursing and medical community. Such disclosure resulted in humiliation and embarrassment for Trooper Sutton, particularly when friends learned about his medical problem. Such harm can lead to anxiety, depression and may even damage the trust Trooper Sutton has in the healthcare system.

Kanady states in his report that he reviewed Sutton's original petition, along with the attached exhibits, and Appellants' original answer. The attached exhibits were the work release and screenshots of the text conversation. He did not review the medical records. He did not review any witness statements.

The evidence attached to the report includes screenshots of the text messages between Sutton and his friend. The text message from Sutton's friend states in pertinent part:

Rumor has it there was a Trooper here yesterday with hemroids [sic]

. . .

One of my customers was there for "Swollen Nuts" he said he really embarrassed because of the lady nurse practitioner until he was told about the Trooper…….that made him feel a lil better

The report also references an alleged statement from McWherter in which she called Sutton's condition "the worse hemorrhoids that she had ever seen." However, no evidence of this statement appears in the record or is attached to the report.

Kanady's report states that McWherter breached the standard of care by "disclosing the medical problem he was experiencing and making light of it to another patient." However, there is no evidence that McWherter made any such statement to another patient. Kanady does not reference any statement by the unnamed customer linking his knowledge of the unnamed Trooper's condition to McWherter. As contained in the report, Kanady speculates that McWherter breached a standard of care to keep medical conditions confidential because Sutton's unnamed friend learned through the unnamed customer that an unnamed Trooper had hemorrhoids. There simply are too many analytical gaps in Kanady's report.

Furthermore, Kanady opines that McWherter violated HIPAA's confidentiality rules without citing to them, explaining what they are, or stating how a violation occurred. And the nursing standards cited by Kanady do not appear to concern patient confidentiality. An expert report cannot merely state the expert's conclusions about the elements; it must explain the basis of the statements and link the conclusions to the facts. *Wright*, 79 S.W.3d at 52. And a report that merely states the expert's conclusions about the standard of care, breach, and causation is deficient. *Palacios*, 46 S.W.3d at 879.

Kanady's report is unsupported by facts and evidence. While an expert report at this stage of the case need not marshal all of the evidence, it should be based on some evidence. As a result, Kanady's report is conclusory and is based on unsupported assumptions. It does no more than create conjecture of a breach of the standard of care and causation of Sutton's injury. *See Taylor*, 320 S.W.3d at 575. Therefore, the trial court abused its discretion in denying the motion to dismiss. Appellants' second issue is sustained.

## DISPOSITION

Having sustained Appellants' second issue, we *reverse* the trial court's order denying Appellants' motion to dismiss and *render* judgment dismissing Sutton's claims against Appellants with prejudice and *remand* the cause to the trial court to consider the amount of attorney's fees and costs to be awarded to Appellants. *See* TEX. CIV. PRAC. & REM. CODE ANN.

§ 74.351(b)(2) (West 2017) (providing for the dismissal of a healthcare liability claim with prejudice if the claimant fails to timely serve a compliant expert report).

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered November 3, 2021.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**NOVEMBER 3, 2021**

**NO. 12-21-00050-CV**

**EAST TEXAS PHYSICIANS ALLIANCE, LLP, D/B/A MAGNOLIA HEALTH SYSTEMS URGENT CARE CLINIC, AND K. MCWHERTER, FNP,**
Appellants
V.
**BRADLEY A. SUTTON,**
Appellee

---

Appeal from the 369th District Court

of Anderson County, Texas (Tr.Ct.No. DCCV19-0814-369)

---

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this Court that there was error in the order as entered by the court below and that same should be reversed and judgment rendered.

It is therefore ORDERED, ADJUDGED and DECREED by this Court that the trial court's order denying Appellants' motion to dismiss in favor of Appellee, **BRADLEY A. SUTTON,** be, and the same is, hereby **reversed** and judgment **rendered** that the Appellee's claims against Appellants are **dismissed** with prejudice and the cause be **remanded** to the trial court to consider the amount of attorney's fees and court costs to be awarded to Appellants. All costs in this cause expended in this Court be, and the same are, adjudged against the Appellee, **BRADLEY A. SUTTON,** for which let execution issue; and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*