**Affirm and Opinion Filed May 24, 2023**



**In the**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-01275-CV**

**DALLAS PLASTIC SURGERY INSTITUTE, INC., Appellant**
**V.**
**WALID ZOUBI, INDIVIDUALLY AND AS HEIR TO AND**
**REPRESENTIVE OF THE ESTATE OF NOUR ALAHMAD, DECEASED;**
**WALID ZOUBI, AS GUARDIAN AND NEXT FRIEND OF LZ, MZ, AND**
**KZ, MINORS; AND GENAN ZOUBI, Appellees**

**On Appeal from the 116th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-20-15793**

## MEMORANDUM OPINION

Before Justices Molberg, Carlyle, and Smith
Opinion by Justice Carlyle

In this healthcare liability case, Dallas Plastic Surgery Institute, Inc. (DPSI) appeals the trial court's denial of its motion to dismiss appellees' claims for lack of an adequate expert report. *See* TEX. CIV. PRAC. & REM. CODE § 74.351. We affirm in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

## Background

Nour Alahmad died after undergoing a June 2019 elective plastic surgery by Dr. Jason Potter. Ms. Alahmad's husband, Walid Zoubi, filed this lawsuit against Dr.

Potter, DPSI, and others in October 2020, alleging negligent medical treatment and care.[1] The live petition asserted, among other things, (1) "Defendant DALLAS PLASTIC INSTITUTE directly by and through Defendant DR. POTTER, other health care providers, agents, servants and/or employees, both actual and ostensible, who were acting within the course and scope of their employment at Defendant DALLAS PLASTIC INSTITUTE was negligent in failing to properly carry out its medical responsibilities to MRS. ALAHMAD" and (2) "there existed an agency by estoppel relationship between Defendant DR. POTTER . . . [and] Defendant DALLAS PLASTIC INSTITUTE . . . as a result of which Defendants are estopped to deny said agency relationship."

Appellees served the defendants with a March 12, 2021 report by Dr. Alan David Kaye in which Dr. Kaye opined that Dr. Potter was negligent and stated:

> It is my understanding that Jason K. Potter, M.D. was an employee and/or agent of . . . Dallas Plastic Surgery Institute, Inc. It has been explained to me that, since Dr. Potter was within the course and scope of his employment or agency with . . . Dallas Plastic Surgery Institute, Inc. at all times relevant to this case, then . . . Dallas Plastic Surgery Institute, Inc. [is] vicariously liable for the negligence of Dr. Potter.

DPSI generally denied appellees' allegations and, following discovery, filed a June 7, 2022 "No-Evidence and Traditional Motion for Summary Judgment on Plaintiff's Vicarious Liability Claims." DPSI's summary judgment motion asserted,

---

[1] The original petition described the plaintiff as Walid Zoubi, individually and as heir to and representative of Ms. Alahmad's estate and as guardian and next friend of their four minor children. The petition was later amended to reflect that one of those children is no longer a minor and is suing on her own behalf.

–2–

among other things, "Plaintiff has not brought any direct liability claims against DPSI. . . . Specifically, Plaintiff has pled that DPSI is allegedly vicariously liable for Dr. Potter's alleged malpractice pursuant to two theories: (1) actual agency/employment; and, in the alternative (2) ostensible agency." According to DPSI's motion, "Since actual agency/employment and ostensible agency are the only two theories of vicarious liability asserted by Plaintiff against DPSI, and DPSI is entitled to summary judgment on both theories, then DPSI is entitled to complete dismissal from this case."

Appellees filed a summary judgment response contending the evidence raised a fact issue as to (1) "apparent authority (often called 'ostensible agency' or 'agency by estoppel')" and (2) "the theory of vice-principal," which "allows the plaintiff to hold a corporation directly liable for the acts of certain corporate agents."

DPSI filed an October 10, 2022 combined summary judgment reply and motion to dismiss appellees' "direct claims" pursuant to Texas Civil Practice and Remedies Code Chapter 74. DPSI contended appellees (1) do not dispute that "Dr. Potter is not the employee or ordinary agent of DPSI," (2) did not raise a fact issue on "ostensible agency" because there is no evidence Ms. Alahmad justifiably relied on the appearance of agency, and (3) "now seek to make a previously unpleaded claim of direct negligence against DPSI—via a 'vice principal' allegation."

As to the "direct claims," DPSI asserted:

> Corporations become liable for the actions of a vice principal (typically for gross negligence) because the acts of the vice principal are acts of the corporation itself. In the Plaintiff's Chapter 74 report, Dr. Kaye offers opinions against Dr. Potter, but merely assumes that DPSI is vicariously liable for Dr. Potter's alleged negligence. He nowhere articulates any opinion regarding the direct acts of DPSI, as a corporation.

DPSI contended that under Chapter 74, appellees "were obliged to serve an expert report setting out a basis for those claims—as apart from the medical claims against Dr. Potter—within 120 days [of] the Defendant's answer," but did not do so. DPSI argued "the *direct* cause of action must be dismissed with prejudice as to [DPSI]" because "the report does *not cover any direct negligence* of DPSI." DPSI also asserted that because "[t]he Kaye Report is no expert report as to the direct claims against DPSI," "no timely objection was necessary" under Chapter 74.

In their response to the Chapter 74 motion to dismiss, appellees contended DPSI waived any objection to Dr. Kaye's expert report because "DPSI's negligence is included in the report" and thus "[t]he deadline for Defendant DPSI to file objections to the report was 4/12/21 (21 days after the report was served)." Appellees also asserted that "[a]n expert report that adequately addresses at least one pleaded liability theory satisfies the statutory requirements, and the entire case may proceed."

Following a hearing, the trial court signed a November 8, 2022 order denying both the summary judgment motion and the Chapter 74 motion to dismiss. DPSI timely filed this interlocutory appeal of the denial of the Chapter 74 motion to dismiss. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(9).

–4–

**Analysis**

Chapter 74 requires a claimant to serve an expert report early in the proceedings on each party against whom a health care liability claim is asserted. *See id*. § 74.351(a). Though a Chapter 74 expert report need not "marshal all the plaintiff's proof," it must provide "a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *Hollingsworth v. Springs*, 353 S.W.3d 506, 513 (Tex. App.—Dallas 2011, no pet.) (quoting TEX. CIV. PRAC. & REM. CODE § 74.351(r)(6)). "Each defendant physician or health care provider whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than the 21st day after the date the report is served or the 21st day after the date the defendant's answer is filed, failing which all objections are waived." TEX. CIV. PRAC. & REM. CODE § 74.351(a).

Chapter 74's goal is "to deter baseless claims, not to block earnest ones." *Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 631 (Tex. 2013). A court shall grant a motion challenging the adequacy of an expert report only if the report does not represent an objective good faith effort to comply with the above-quoted statutory definition of "expert report." *Hollingsworth*, 353 S.W.3d at 513 (citing TEX. CIV. PRAC. & REM. CODE § 74.351(*l*)). "To constitute a good faith effort, the report must

–5–

provide enough information to meet two requirements: (1) it must inform the defendant of the specific conduct the plaintiff has called into question, and (2) it must provide a basis for the trial court to conclude that the claims have merit." *Id*. (citing *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002)). "A plaintiff need not present evidence in the report as if [he] were actually litigating the merits, and the information in the report does not have to meet the same requirements as the evidence offered in a summary judgment proceeding or at trial." *Id*. (citing *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 879 (Tex. 2001)); *accord Miller v. JSC Lake Highlands Operations, LP*, 536 S.W.3d 510, 517 (Tex. 2017). Additionally, whether the standards referenced in the expert report appear reasonable is not relevant to the analysis of whether the expert's opinion constitutes a good-faith effort. *Miller*, 536 S.W.3d at 516–17.

"A report that satisfies these requirements, even if as to one theory only, entitles the claimant to proceed with a suit against the [defendant]." *Potts*, 392 S.W.3d at 630. "If a health care liability claim contains at least one viable liability theory, as evidenced by an expert report meeting the statutory requirements, the claim cannot be frivolous." *Id*. at 631. "[A]n expert report that adequately addresses at least one pleaded liability theory satisfies the statutory requirements, and the trial court must not dismiss in such a case." *Id*. at 632.

We review a trial court's ruling on the adequacy of an expert report under an abuse-of-discretion standard. *E.g.*, *Hollingsworth*, 353 S.W.3d at 512. A trial court

abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to guiding rules or principles. *Id.*

Here, DPSI contends, "The sole issue is that the trial court should have found that agency did not exist as a matter of law and should have granted the motion to dismiss." According to DPSI,

> There were two claims against DPSI: an agency theory for the conduct of Dr. Potter as a physician and a direct theory for "vice principal" liability for Dr. Potter in a corporate capacity. It was established as a matter of law that Potter is not an agent, actual or ostensible. That left only the rather exotic vice principal theory in this healthcare liability case. But the sole report filed to satisfy Chapter 74 did not mention any such theory and is no report at all as to [DPSI].

Additionally, DPSI contends that "[w]hat was fully articulated in *Potts*, is that so long as a report is supplied for a viable theory, other nonviable theories need not be supported." According to DPSI, *Potts* does not support the trial court's ruling because "[i]n this case there was no viable theory, as a matter of law, of 'ostensible agency'" and the "direct-liability" theory is "the only viable theory against DPSI." Thus, DPSI argues, "[b]ecause there was but a single viable healthcare liability claim against DPSI, for direct liability and because there is no expert report to support it, the Court of Appeals should reverse and render."

As described above, our supreme court stated in *Potts*, "If a health care liability claim contains at least one viable liability theory, as evidenced by an expert report meeting the statutory requirements, the claim cannot be frivolous." *Potts*, 392 S.W.3d at 631. To the extent DPSI contends *Potts'* use of the term "viable" means

–7–

appellees were required to meet a summary judgment standard of proof in order to satisfy Chapter 74's expert report requirement, we disagree. Nothing in *Potts* states or indicates that the term "viable" implicates anything other than compliance with Chapter 74's statutory expert report requirements. *See id*. In fact, that same opinion specifically explains that summary judgment standards should not be applied in determining the adequacy of an expert report. *Id*. at 631–32 ("Summary judgment motions permit trial courts to dispose of claims that lack evidentiary support. But while a full development of all liability theories may be required for pretrial motions or to convince a judge or jury during trial, there is no such requirement at the expert report stage."). Additionally, the supreme court concluded in *Potts*: "In sum, an expert report that adequately addresses at least one pleaded liability theory satisfies the statutory requirements, and the trial court must not dismiss in such a case." *Id*. at 632.

DPSI did not assert a timely objection to the expert report's sufficiency regarding appellees' ostensible-agency theory and thus waived all such objections. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(a). Because there was no timely challenge to the report's adequacy regarding "at least one pleaded liability theory" against DPSI, the trial court did not abuse its discretion by denying DPSI's Chapter 74 motion to dismiss.[2] *See Potts*, 392 S.W.3d at 632 ("[W]hen a health care liability

---

[2] Appellees contend in their appellate brief that this appeal "should be dismissed for want of jurisdiction" because "the actual substance of [DPSI's] complaint is the trial court's refusal to grant

claim involves a vicarious liability theory, either alone or in combination with other theories, an expert report that meets the statutory standards as to the employee is sufficient to implicate the employer's conduct under the vicarious theory. And if any liability theory has been adequately covered, the entire case may proceed.").

We affirm the portion of the trial court's order denying DPSI's Chapter 74 motion to dismiss appellees' claims against it for lack of an adequate expert report.

221275f.p05

/Cory L. Carlyle/
_____
CORY L. CARLYLE
JUSTICE

---

summary judgment based on the absence of duty," and "[i]nterlocutory appeals are not authorized from the denial of a motion for summary judgment that raises a purported lack of duty or that disputes the viability of an agency theory." Though we agree that our jurisdiction generally does not extend to an interlocutory appeal of the denial of a motion for summary judgment, we do not lack jurisdiction over this interlocutory appeal of the denial of a Chapter 74 motion to dismiss. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(9). As described above, any complaints of DPSI regarding the trial court's summary judgment ruling are not pertinent to our analysis in this section 51.014(a)(9) appeal. *See Potts*, 392 S.W.3d at 631–32; *see also Miller*, 536 S.W.3d at 517. Thus, we reject appellees' jurisdictional challenge.



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

DALLAS PLASTIC SURGERY
INSTITUTE, INC., Appellant

No. 05-22-01275-CV    V.

WALID ZOUBI, INDIVIDUALLY
AND AS HEIR TO AND
REPRESENTIVE OF THE ESTATE
OF NOUR ALAHMAD,
DECEASED; WALID ZOUBI, AS
GUARDIAN AND NEXT FRIEND
OF LZ, MZ, AND KZ, MINORS;
AND GENAN ZOUBI, Appellees

On Appeal from the 116th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-20-15793.
Opinion delivered by Justice Carlyle.
Justices Molberg and Smith
participating.

In accordance with this Court's opinion of this date, we **AFFIRM** the trial court's order denying Dallas Plastic Surgery Institute, Inc.'s motion to dismiss appellees' claims under Texas Civil Practice and Remedies Code Chapter 74.

It is **ORDERED** that appellees WALID ZOUBI, INDIVIDUALLY AND AS HEIR TO AND REPRESENTIVE OF THE ESTATE OF NOUR ALAHMAD, DECEASED; WALID ZOUBI, AS GUARDIAN AND NEXT FRIEND OF LZ, MZ, AND KZ, MINORS; AND GENAN ZOUBI recover their costs of this appeal from appellant DALLAS PLASTIC SURGERY INSTITUTE, INC.

Judgment entered this 24th day of May, 2023.